### D. W. McGLASSON v. THE STATE.

No. 1671. Decided November 24, 1897.

**1. Venue—Bill of Exceptions—Construction of Statute—Practice on Appeal.**

The amendment to article 904, Code of Criminal Procedure (Acts 25th Leg., p. 11), requires the court, on appeal, to presume that the venue was proved unless it is made affirmatively to appear to the contrary by bill of exceptions incorporated in the transcript, etc. This would apprehend that before the court on appeal could hold the venue was not proved, the court below must certify that the evidence did not establish the venue, or the bill of exceptions should contain all the evidence bearing upon the same; and from this testimony it must appear that the venue was not proved.

**2. Forgery—Venue—Sufficient Proof of.**

On a trial for forgery, alleged to have been committed in· B. County, proof of venue is sufficient where it showed that defendant lived in, and that the note bore date in, and was made payable to him in B. County; and that shortly after its purported execution he went from B. to another county, where he negotiated the note, stating at the time he was just from B. County.

**3. Same—Irrelevant Evidence.**

On a trial for forgery, evidence that defendant had turned over all his property to the prosecutor in settlement of all his indebtedness, is immaterial and irrelevant in the absence of some other showing of its bearing on the question as to whether defendant forged the note in controversy; and the fact that the prosecutor had testified to important criminating facts, would not, of itself, make such testimony admissible.

**4. Bill of Exceptions to Admitted Evidence—Sufficiency Of.**

A bill of exceptions to admitted evidence must be so full and clear as to obviate the necessity of inferences, which will not be indulged to supply omissions; in and of itself it must disclose all that is necessary to manifest the supposed error; it must set out the proceedings and attending circumstances to show that error was committed; it must disclose the ground or grounds of objection, and grounds of objection not stated will, ordinarily, be considered as waived.

**5. Same—Forgery—Declarations of Purported Maker.**

On a trial for forgery, a bill of exceptions showed that testimony was admitted, over objection of defendant, to the effect that the purported maker of the note always repudiated the making of the same. Unquestionably the testimony was hearsay, and was inadmissible in any state of case, except where it might have been used in support of the testimony of the purported maker had he testified as to such matters, and been subsequently impeached in relation thereto. The bill of exceptions, to say the least, makes a prima facie case of the inadmissibility of the evidence.

**6. Same.**

On a trial for forgery, where the vital question at issue was whether defendant had authority from the purported maker to execute the note, it was not competent for the State by original testimony to support the purported maker's testimony by other evidence to the effect that he had stated, when he first saw the note, that he had not executed or authorized its execution, and that he had always since repudiated the idea of its execution by his authority.

APPEAL from the District Court of Bell.    Tried below before Hon. JOHN M. FURMAN.

Appeal from a conviction for forgery; penalty assessed, two years imprisonment in the penitentiary.

The indictment charged both forgery and passing a forged instrument, in separate counts.    The alleged forged instrument is as follows, to wit:

"$660.                                    TROY, TEXAS, Nov. 5, 1895.

"On the 1st day of January, 1897, I promise to pay D. W. McGlasson or order, at the office of McGlasson & Co., in Troy, Texas, the sum of six hundred and sixty dollars, with interest at the rate of 10 per cent. per annum from date until paid, interest payable annually; and in default of payment of interest or principal when due, then this note and all others of the same series shall become due, at the option of the holder.

"For value received, being a part of the purchase money to become due upon 100 acres of land, being a part of the C. Bendel survey, situated in Bell County, Texas, this day conveyed to me by the said L. M. Cann, upon which said land the vendor's lien is retained in the deed, to secure payment thereof.

"And in case this note is placed in the hands of an attorney for collection, I agree to pay 10 per cent. on the amount of principal and interest then due as attorney's fees.

| "Cash | $1330 | 00 | | |
|---|---|---|---|---|
| "Note No. 1. | 660 | 00 | | W. T. CLARK." |
| "   "   2. | 660 | 00 | | |
| "   "   3. | | | | |
| "   "   4. | | | | |
| "   "   5. | | | | |

"Total consideration, $2650.

J. Q. Thompson testified that he knew L. N. Cann and wife, and W. T. Clark, and that he had drawn up a deed from Cann and wife to Clark conveying two tracts, parts of the Bendel survey, one of said tracts containing 100 acres, the purchase price being $2650, $1350 of which was paid in cash, the unpaid balance being evidenced by five promissory notes for the sum of $264 each, executed by W. T. Clark, and for which a vendor's lien was reserved in the deed. The deed was read in evidence, as were also the notes, the notes each being indorsed "L. N. Cann." Thompson further testified that he had known defendant McGlasson eighteen or nineteen years, and that McGlasson has been in business fourteen or fifteen years at Troy, in Bell County. That he was acquainted with McGlasson's handwriting; had seen him write many times, and that he had examined the alleged forged note, and that in his opinion it was the handwriting of defendant.

E. Rotan testified in substance that he lived in Waco, Texas, and was a banker; was acquainted with defendant, and had done a great deal of business with him. That in December, 1895, defendant having agreed to come to Waco to see him on business, did come from Troy, in Bell County, on the "Katy" Railway, to Waco, to his office at the bank in Waco, and said he was "just from Troy." He brought with him the note in this case, alleged to have been forged, which he delivered to me and which I received from him. At the same time I received from him another note for the same amount, same date, but due one year later, viz., January 1, 1898. Both notes called for $660 each. Witness had seen defendant write a great deal and had received many letters from him, and in his opinion the alleged forged note set out in the indictment was in defendant's handwriting. In his opinion defendant wrote the name "W. T. Clark," signed to this note. In his opinion the other $660 note was in the handwriting of the defendant. Witness was also of the opinion that the one thousand dollar note shown him, and signed with the name of W. T. Clark, was in the handwriting of defendant; and in his opinion the name W. T. Clark was signed to them by defendant. That the "W. T. Clark" did not appear to be in the ordinary handwriting of defendant, but appears to be in a disguised hand. That he received the two $660 notes from the defendant as collateral for money which he had

already advanced to defendant. Defendant told him that the notes were all right, and were a first lien on 100 acres of land; that he knew the land, and that the notes were secure. That the towns of Troy and Waco were about twenty miles apart, on the same railroad, and it took about one hour's run from one to the other. That defendant gave him written authority to indorse his name on the back of these two notes for $660, along with other collaterals; and the witness produced and read in evidence this written evidence, which was dated Troy, Texas, February 7, 1896. That defendant failed in business on the 19th of February, 1896, and he gave witness a bill of sale to his stock of goods and property. That as soon as the two $660 notes were shown for the first time to W. T. Clark, soon after defendant's failure, Clark most emphatically denied executing them or knowing anything about them; but said that he had executed four or five smaller notes whose aggregate amounts was the same. Witness testified: "Said Clark has never admitted to me the genuineness of these notes, but has always denied having anything to do with them or knowing anything about them."

W. T. Clark testified, in substance: That he could neither read nor write. Knew the defendant well; he was his uncle by marriage; that he had seen the $660 note, alleged to have been forged, in this case; that he had never signed said note, did not authorize defendant or any one else to sign his name to it, and that his name was signed to it without his knowledge or consent. That he had never heard of the two notes for $660 until after defendant's failure in 1896, when he saw them in the possession of Mr. Rotan, who showed them to him. Nor did he ever execute or authorize any one to sign his name to a note for $1000, which was shown witness and offered in evidence. That he never owed defendant any such sums of money. That he had bought 100 acres of the Bendel survey from Cann and wife, and the deeds and notes for the purchase money were written by J. Q. Thompson, and the five notes mentioned in that deed are genuine. That these notes were turned over by Cann to defendant. The First National Bank of Temple has three of these notes. Mr. Frank Spann has one, and R. B. Cook the other. They were for $264 each, and were all that he owed defendant or anyone else on the land. Witness testified: "I did not give defendant permission to use my name whenever he wanted to. He never asked me to use my name. It is not true that in the house of J. W. McGlasson, in Waco, in March, 1896, in the presence of J. W. McGlasson and his wife, and Mrs. Birdie Wright, I told them that, if defendant had used my name, he had the right to do so; that I had always given him authority to use my name. It is not true that in August, 1896, in Belton, Texas, I told J. H. Judd that I had given defendant authority to sign my name to notes, but that he had gone too far with it and ruined me. I know Judd, and saw him in Belton at that time, but did not tell him this, and had no talk with him about it at all. I never did admit to McGlasson, the defendant, that these three notes, the two $660 notes and the $1000 note, were genuine, but have always denied executing them or knowing anything about

them." [As to these latter statements, the witness was impeached by the witness Judd and Mr. and Mrs. J. W. McGlasson, but Mrs. Birdie Wright testified, that she had heard no such statement by W. T. Clark.] The witness Clark further testified: "I did not owe defendant any such sum of money as he now claims I did. I did owe him about $25, and no more. I did not sign the contract and agreement referred to in defendant's testimony, witnessed by Cann, Kennon, and Montgomery. The first time I ever saw or heard of said agreement was when I saw it here at court in August, 1896."

It was proved, that of the five $260 notes, the First National Bank of Temple received three as collateral security from the defendant, and Downes, the president of said bank, said that he knew the defendant's handwriting, and in his opinion, the alleged forged note was in his handwriting.

S. H. Bowers testified: That he had worked for and clerked for defendant for years; had been his partner in business; knew his handwriting well, and in his opinion the notes offered in evidence were written by defendant. That the body of the note alleged to have been forged is in defendant's usual handwriting. The name, W. T. Clark, is not in his usual handwriting, but I think he wrote it—appears to be somewhat disguised.

Frank Spann testified that he had received one of the $260 notes from the defendant, and held it yet.

R. B. Cook testified that he had one of the $260 notes which he had received from the defendant.

D. W. McGlasson, defendant, testified: "I am the defendant in this suit. My home was in Troy prior to my arrest, but I have been in Belton jail ever since a year from last April. I was a merchant in Troy, Texas, from 1882 till February 19, 1896, when I failed in business by giving E. Rotan a bill of sale to my mercantile business as payment on debts I owed him. I was in Troy from time of my failure till I was put in jail. W. T. Clark never made any complaint in court against me for forgery. When I was put in jail it was on another case than the Clark case. I wrote the body of each of the $660 Clark notes offered in evidence. One of them is the one I am on trial for forging. J. M. Cann signed the name W. T. Clark to the notes. Clark was present and requested J. M. Cann to sign his name. The $1000 note offered in evidence was written by P. G. Taylor, then of Troy, but now living in Waco, and was signed by J. M. Cann at request of W. T. Clark. Mr. W. T. Clark owed me the amount of money aggregated by these notes. He was a remote kinsman of mine. He had traded at my store for many years. He came to me and said he was going to lose his home he had bought from W. S. Wright. That he had paid a good deal on it, but would have to lose it, as he could not pay it out, and they were crowding him, and asked me if I could not sell him a place on time in the same way I had helped some other parties. I sold him on time the tract of land these five notes are against, the title of which land

was in L. N. Cann, and took his place, that he was giving up, as a cash payment to the extent of the face of these notes, with the understanding that if I failed to save the land by selling it to Rotan and getting this amount out of it above what was against the land, W. T. Clark should make it good with lien notes against the land I had just sold him. I could not make anything out of the land. Rotan took it, but I lost this amount. W. T. Clark then executed the following instrument in writing.

" 'TROY, TEXAS, Nov. 24, 1895.

" 'I hereby acknowledge myself indebted to D. W. McGlasson in the sum of $2330, and authorize him to sign my name to vendor's lien notes for that amount as suits his business best. I mean for such amount to each note. Of course he is to protect said notes and me to pay only as I can make it. He is to have the deed arranged to suit such notes as are executed and keep a record of the same. I am to deal only with said D. W. McGlasson, him paying all others who have claims against my land. Witness in whereof I sign my name above date.

[Signed]                              " 'W. T.  $\overset{\text{his}}{\times}$  CLARK.'
                                                          mark

" 'Witness:

" 'C. W. KENNON,

" 'L. N. CANN,

" 'J. D. MONTGOMERY.'

"I wrote the body of the instrument and signed Clark's name, and he touched the pen and made his mark. He can not write his name. C. W. Kennon, L. N. Cann, and J. D. Montgomery signed as witnesses. Kennon came in and wanted some money to pay freight, and I asked him to sign, and he said he had not the time. I told him to sign while I was getting the money. He did so. I borrowed $10 from Clark, not having quite enough money to pay the freight wanted. L. N. Cann signed and also Montgomery. When these notes were made out I not only relied on this contract, but Clark himself was present when the notes were made and signed. After my failure in business, a few days, E. Rotan, with whom I had deposited these notes, came to Troy with them and showed them to Clark and he said nothing about not signing them in my presence. On the contrary, he sent a telegram to J. Q. Thompson, who had taken his deed to Belton to have it recorded, requesting him not to record the deed. He also sent one to the clerk. The deed was brought back, and as offered in evidence shows never to have been recorded. I wrote the telegrams at request of Mr. Rotan, and gave them to Clark, and he sent them. Our object as understood was to make the deed conform to these notes the same as the ones already described in the deed that were out in the hands of other parties, and this was understood by Clark. When I let Mr. Rotan have these two $660 notes I did not indorse them. I told him there were others that I wanted to take up before indorsing them. I afterwards signed an authority to Mr.

Rotan to indorse my name on all the collateral notes he held of mine, and I think these were likely among them. I was doing business with Rotan's bank, and would leave from time to time notes as collateral security. The other $1000 note I let Mr. Muse have in person for his firm and explained fully the transaction. W. T. Clark never denied to me executing these two $660 notes and the $1000 note, but on the contrary always acknowledged their genuineness."

C. W. Kennon, one of the subscribing witnesses to the instrument set out above in the testimony of McGlasson, testified that he had signed the instrument, but had never read it and did not know what was in it; did not see Clark sign it—don't think he was present. Saw L. N. Cann, one of the other subscribing witnesses, sign it, but don't remember to have seen J. D. Montgomery, the other subscribing witness, sign the same. L. N. Cann, the subscribing witness, has left the country.

J. D. Montgomery testified that he did not remember anything about witnessing the instrument, but in his judgment it was his signature.

The errors assigned, in so far as they are discussed in the opinion, will be found set out fully in appellant's brief below.

*J. E. Yantis* and *Pierce & Felts,* for appellant.—The verdict of the jury is unsupported by the evidence, in this, that there is no venue proven in the cause. Appellant requested the court to instruct the jury to return a verdict of not guilty on this account. There is not a word of testimony that appellant either made or used the alleged forged note in Bell County, or that he ever saw it in Bell County. There is no proof that the land on which a lien was retained was situated in Bell County. Neither was there any allegation in the indictment that the notes related to title of real estate situated in said county. The allegation of venue is the simple allegation that he forged the note in Bell County. On the proposition that venue must be affirmatively shown and not left to inference, and on the proposition that venue must be pleaded in accordance with provisions of the statute, we cite the following authorities: Ryan v. State, 22 Texas Crim. App., 699; Williams v. State, 21 Texas Crim. App., 256; McKenzie v. State, 32 Texas Crim. Rep., 568; Miles v. State, 23 Texas Crim. App., 410.

The court erred in permitting the State's witness E. Rotan to testify, over appellant's objections, that a short time after appellant's business failure, he, Rotan, met W. T. Clark and showed him the notes charged to have been forged, or told him the amount of each note, and said Clark repudiated them and said he did not sign them or authorize any person to do so; that Clark said he had signed notes against his land, but there were five of them of smaller amounts, and said Rotan, over appellant's objections, testified further that Clark had always repudiated these two $660 notes when talking to him after he told Clark the number and amounts of the notes. This evidence was objected to and a bill of exceptions taken to the ruling of the court.

We understand the rule to be, that a witness may be supported by proving that before any motive existed the witness made the same statements as he has testified to on the stand. We do not understand that this may be done simply because it has been proven that the witness has made conflicting statements. But aside from that, in this case the record shows that all of these statements repudiating the notes were made after the witness had a motive to misstate facts, for when he first denied the execution of the notes, appellant had failed in business and become notoriously insolvent, and could no longer protect the notes and protect Clark as to his land. When they were made the record shows that appellant was solvent, and could, as he had agreed to do, protect the notes and protect Clark's land. McGlasson failed in business, and then there was the strongest motive for Clark to state falsely in regard to executing the notes. And then these statements were made repudiating the notes. Not before McGlasson's failure were any of these statements made by the witness. The evidence is hearsay, pure and simple, and of a most dangerous character. Jones v. State, and authorities there referred to, ante, p. 87.

The court erred in refusing to instruct the jury to disregard the remarks of W. T. Shannon, Esq., in his opening speech for the State, when he used the following language, to wit: "The defendant is the coolest man on the witness stand I ever saw. If he had been in an ice chest twenty-four hours he could not have been cooler. He is as cold a man as ever cut a throat or scuttled a ship." Appellant objected to this language at the time it was used, and requested the court to instruct the jury to disregard it, which the court declined to do, and the defendant excepted. If this language was intended as a quotation, its author was indeed badly dealt with. And whether or not it was so understood by the jury, it was improper and may have inflamed the minds of the jury, and it may have influenced their verdict.

The court erred in refusing to allow the appellant, while on the stand as a witness, to testify that on February 19, 1896, appellant gave to the State's witness, E. Rotan, a bill of sale to his entire stock of merchandise, worth $15,000, and to 65 bales of cotton and 12,000 bushels of oats, and gave to said Rotan $72,000 worth of promissory notes, as collateral security, to pay said Rotan the sum of $20,000, and the court refused to allow appellant to testify that this $20,000 was all he owed Rotan, or his bank, and that said Rotan had always since refused to have a settlement with appellant, to see how their accounts stood.

Appellant excepted to this ruling. This testimony was admissible for two purposes. (1) It was admissible to show the interest and bias of the State's witness, Rotan. (2) It was admissible as being part of the act, declarations, and conversations had between appellant and the State's witness, Rotan. The State had proved by Rotan that appellant had failed in business on February 19, 1896, and that he had given to Rotan a bill of sale to his entire stock of merchandise in Troy.

Article 751 of the Code of Criminal Procedure reads as follows: "When part of an act, declaration, or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all other letters on the same subject between the same parties may be given. And when a detailed act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it fully understood or to explain the same, may also be given in evidence." This statute is mandatory, and yet it was not observed in this case.

When the State had proven a business failure, and a bill of sale to Rotan of appellant's stock of merchandise, the foregoing testimony offered by appellant was necessary to make the transaction fully understood.

Appellant had a right to show what kind of a failure he made. He had a right to show all the circumstances of the failure. He should have been permitted to show that it was an honest and unavoidable failure. The State offered his business failure as a circumstance against him. They considered it of sufficient value to prove it, knowing that the jury might convict him for that, which it is likely they did. It was then unjust to forbid him the right to account for his assets and to show that he had not failed full handed. The evidence appellant offered was on the same subject. The transaction was between the same parties. It was the same transaction that the State had inquired into, and appellant only wished to show the balance of the transaction. This error was damaging to his cause, and for this error this case should be reversed and remanded. Code Crim. Proc., art. 751; Davis v. State, 3 Texas Crim. App., 91; Pharr v. State, 9 Texas Crim. App., 130; Sager v. State, 11 Texas Crim. App., 110; Green v. State, 17 Texas Crim. App., 395; Harrison v. State, 20 Texas Crim. App., 387; Stockman v. State, 24 Texas Crim. App., 387.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of forgery, and his punishment assessed at imprisonment in the penitentiary for a term of two years; hence this appeal.

The forgery charged was that of a note for $660, dated Troy, Texas, November 5, 1895, and due January 1, 1897, bearing interest at 10 per cent per annum. The note was made payable to W. D. McGlasson, or order, at the office of McGlasson & Co., at Troy, Texas, and purported to have been executed by W. T. Clark. Said note also retained a vendor's lien on 100 acres of land, part of the C. Bendle survey, in Bell County.

The testimony for the State showed, by W. T. Clark, himself, that the signature, "W. T. Clark," was a forgery, and that the handwriting, as testified by experts, appeared to be that of the appellant. The testimony on the part of the appellant tended to show that the body of said note

was written by appellant, and that L. M. Cann signed the name "W. T. Clark" to said note, and Clark, who was present, authorized the same, and affixed his mark thereto, in connection with his name. In addition to this, there was other testimony, of a collateral character, tending to corroborate and support the respective theories of the parties.

Appellant asked the court to instruct the jury to return a verdict of not guilty, on the ground that no venue had been proved; but this the court refused to do, and appellant reserved his exception to the action of the court. The question presented as to this bill of exceptions is, does it sufficiently comply with the amendment to article 904 adopted by the Twenty-fifth Legislature? See Laws 25th Leg., p. 11. The act in effect provides that, as to the venue in all cases, the court shall presume that it was proved in the court below, unless it was made an issue there and it affirmatively appears to the contrary by a bill of exceptions, properly signed and allowed by the judge, or proved up by bystanders, as is now provided by law, and incorporated in the transcript, as required by law. It occurs to us that this statute requires this court to indulge the presumption that the venue was proved in the court below, unless the bill of exceptions shows affirmatively that it was not proved. This would seem to apprehend that, before we can treat the venue as not proved, the court must either certify that the evidence did not establish the venue, or that said bill of exceptions should contain all the testimony in the case tending to show venue, and certify that same was all the testimony bearing upon that issue; and from this statement of the testimony it affirmatively appears that the venue in the case was not proved. If this be a true construction of said article, then the bill in question does not comply with the requirements of the law. If, however, it be conceded that the bill, as contained in the record, would require us to look to the statement of facts to see whether or not the venue was sufficiently proved, then in our opinion the evidence sufficiently established the venue of the case. The testimony showed that appellant, at the time of the alleged forgery, was doing business at Troy, in Bell County; the note bore the date, Troy, Bell County, November 5, 1895. It was made payable at the office of appellant, at Troy, in Bell County. Rotan, to whom the note was negotiated in December, 1895, shortly after its purported execution, stated that he lived in Waco, which was connected by railroad with Troy, Bell County, and about an hour's ride therefrom; that in December, 1895, the defendant came from Troy, in Bell County, on the "Katy Railroad," to Waco, and came to his office at the bank in Waco, and told him he was just from Troy, and brought the note with him which he is charged in this case with forging, and he there received from him said note. This, in our opinion, was sufficient proof of venue, aside from the testimony of appellant himself, which tends to corroborate the State's evidence on venue in every particular.

Appellant offered to prove by himself, when he was on the stand as a witness in his own behalf, that on the 19th of February, 1896, he gave to E. Rotan (the State's witness, to whom the proof showed the note in

question had been passed, and after said Rotan had testified as a witness to important criminating facts) a bill of sale to defendant's entire stock of merchandise, worth $15,000, and to sixty-five bales of cotton, and 12,000 bushels of oats, and $72,000 worth of promissory notes, as collateral security to pay the said Rotan the sum of $20,000; and defendant offered to prove that that was all that he owed the said Rotan or his bank; and that said Rotan had always since refused to have a settlement with defendant to see how their accounts stood with each other. On objection by the State, said testimony was excluded, and defendant excepted to the same. The relevancy of this testimony is not made manifest by the bill of exceptions, and it occurs to us that there was no error in the action of the court in excluding the same. We can not see how said testimony would tend to disprove the fact of forgery charged against the appellant. Concede that he surrendered to Rotan all of his assets, and that Rotan was his sole creditor (which, however, is not shown in the bill), and that his assets far exceeded his liabilities, still this testimony would not, in the absence of some other showing, have any bearing on the question as to whether or not appellant forged the note in controversy. The mere fact that Rotan had testified to important criminating facts would not of itself make such testimony admissible. It may be possible that Rotan may have testified to a state of facts which made said evidence relevant; but the bill does not show this, nor does the bill show the object of this evidence. In our opinion, the court did not err in excluding said testimony.

On the trial, appellant presented the following bill of exceptions to the introduction of testimony on the part of the State: "Be it remembered, that on the trial of the above entitled and numbered cause, when the State's witness E. Rotan was on the witness stand, he was asked the question by the State's counsel, if he ever showed to W. T. Clark the note charged to have been forged by the indictment in this cause, together with another note in the same amount, purporting to be made at the same time and place, and purporting to be signed by the same party, and, if so, when was it, and what did said W. T. Clark say with reference to executing said notes or authorizing any other person to do so for him, to which question the defendant objected, on the ground that what said W. T. Clark said in the absence of defendant was hearsay and incompetent for any purpose; but the court overruled all of said objections, and permitted the said E. Rotan to answer said question as follows, and permitted said answer to go to the jury as evidence. His answer was as follows, to wit: 'It was shortly after defendant's business failure I saw W. T. Clark, and told him I had some notes against his land; but at this time I did not tell him the amount of the notes. A few days after this I saw him again, and showed him the notes, or told him the amount of each note; and he repudiated them, and said he did not sign them, or authorize any other person to do so. He said that he had signed notes against his land, but there were five of them, and of smaller amounts. He always repudiated these two $660 notes when talking to me after I

told him the number of notes and their amount.' Defendant then and there, in open court, excepted to the ruling of the court in overruling his objections to the aforesaid question, and excepted to the ruling of the court in permitting said answers to go to the jury, and he now tenders this his bill of exceptions," etc.

The first question that presents itself with reference to this bill is the sufficiency of the same to show that said testimony was admissible. We understand the rule on this subject to be as follows: The allegations of a bill of exceptions should be full and explicit, so that the matters presented for revision may be comprehensible, without recourse to inferences. Inferences will not be indulged to supply omissions in the bill of exceptions. The bill must be so full and certain in its statements that in and of itself it will disclose all that is necessary to manifest the supposed error. It must sufficiently set out the proceedings and attending circumstances below to enable the appellate court to know certainly that error was committed. See Willson's Crim. Proc., sec. 2368, and authorities cited. When a bill of exceptions is taken to the admission of evidence, the bill should clearly disclose the ground or grounds of objection made to the evidence; otherwise, it is not entitled to be considered. The grounds of objection not so stated will ordinarily be considered as waived. Bills of exception should be full, clear, and specific, setting forth distinctly every fact essential to an understanding of the matters sought to be presented thereby. See Willson's Crim. Proc., sec. 2516, and authorities there cited; Cline v. State, 34 Texas Crim. Rep., 347; Gay v. Railroad (Texas Sup.), 30 S. W. Rep., 543; Buchanan v. State, 24 Texas Crim. App., 195; Smith v. State, 4 Texas Crim. App., 627.

Now, the question presented is: Does said bill of exceptions make it sufficiently appear that said evidence was not admissible, it being conceded that the onus was upon the appellant to show by his bill the inadmissibility of said testimony? Of course, if it obviously appears from the bill that in no state of case was said testimony admissible, then it should not have been admitted. But suppose there is a contingency in which we would conceive the testimony is admissible; then we would be confronted with the principal difficulty in complying with the rules above laid down. In this particular case we can understand how, in a certain state of case, some of the testimony embodied in the bill was relevant. For instance, if the State's witness W. T. Clark had sworn (as he did), while on the stand on behalf of the State, that he did not sign or authorize appellant or Cann to sign said note, and then the defendant, in order to impeach him, had shown by some other witness that he had stated to them, subsequent to the transaction, that he had authorized Cann or appellant to sign said note, in such state of case, under the rulings of this court, it would have been competent for the State, in support of the witness Clark, to show that recently after the alleged forgery, or recently after it had come to his knowledge that the execution of said note was attributed to him, he had stated that he did not execute said note. Such evidence would be competent on the part of the State. Now, is there

enough in the bill to exclude the idea that the contingency occurred to render said testimony admissible, and was said testimony, as shown, admissible for the purpose above indicated? It may be admitted that the bill does not directly do this, but, if it indirectly shows that the contingency had not occurred, it would still be sufficient. The bill shows that the witness answered "that, shortly after defendant's business failure, said witness Rotan saw W. T. Clark, and then told him that he had some notes against his land; and, a few days after this, witness saw him again, and showed him the notes, and he repudiated them, and said he did not sign them or authorize any other person to do so. He stated that he signed certain five notes against said land, but they were for small amounts." He always repudiated these two $660 notes when talking to Rotan, after he told him the number of the notes and their amounts. Unquestionably, the testimony was hearsay, and the objection urged to its admission was good, unless said evidence comes within the exception above indicated. The answer of the witness does not connect it with the transaction, to wit, the alleged forgery, and its first discovery by the witness, so as to show that the statements by Clark were made to the witness Rotan recently thereafter. Indeed, the testimony is made to cover almost any space of time from the discovery up to the trial, because the witness, by his answer, says that Clark always repudiated said two notes of $660. This testimony given in this general way, it occurs to us, was admissible under no state of case. Under the rule above laid down, we have only gone to the extent of admitting this character of testimony in support of an impeached witness, where the statements were made recently after the event. See Bailey v. State, 9 Texas Crim. App., 99; Williams v. State, 24 Texas Crim. App., 637; Dicker v. State (Texas Crim. App.), 32 S. W. Rep., 541; Campbell v. State, 35 Texas Crim. Rep., 160. In our State, in this regard, we have gone beyond the rule laid down by the text writers on this subject generally. See 1 Whart. on Ev., p. 570; 3 Jones on Ev., arts. 872, 873.

Furthermore, in regard to this bill of exceptions, it shows that the witness Rotan was on the stand for the State. It is not shown that he was used in rebuttal to support the witness Clark. It fails affirmatively even to show that he stated that the declarations or statements of Clark were recently after he discovered the alleged forgery, and besides, as stated above, he does not confine the statements of Clark to any particular time, but makes him state that he always repudiated signing the notes. While the bill should have been drawn more accurately, presenting the inadmissibility of said testimony, yet we gather enough from it to suggest that the contingency on the part of the State to offer such supporting testimony had not occurred, and that said testimony as offered was hearsay, and did not come under the exception above indicated, and was obnoxious to the objection urged by appellant. If the bill did not speak the truth, it was the duty of the court, in approving the bill, to show that the contingency had occurred that made said evidence admissible, and thus relieve the question of difficulty. It is true there is an

attempt by the State, in reply to the motion for a new trial, to show that said testimony was properly admitted by the court in support of the witness Clark, after he had been impeached by the defendant; but under no rule that we are aware of are we permitted to look to this matter to help out the bill of exceptions, nor can we look back to the statement of facts in this connection. If we were permitted to do this, it would appear therefrom that the testimony of Rotan, which was objected to, was original testimony, offered by the State. Looking to the bill itself, we think it makes a prima facie case, at least of the inadmissibility of said eivdence. In our view of the case, this improperly admitted testimony was upon a material issue. In fact, the vital question raised by the defendant was as to the authority of Clark to defendant and Cann to execute said note. This was a disputed question, and it was not competent for the State, by original testimony, to support the witness Clark, to the effect that he had stated (shortly after the failure of appellant in business, when he first saw said note) that he had not executed the same, or authorized its execution, and that he had since always repudiated said note as having been executed without his authority. This improper and illegal testimony was thrown into the scale against the appellant, and we can not tell what effect it may have had upon the jury. Its purpose was to corroborate Clark, and doubtless it was so regarded by the jury.

We think, under the circumstances of this case, that the court acted properly in charging on the question of principals, in view of the defendant's evidence that he and Cann together executed the note in question. As to whether the court was in error in refusing the requested instructions on the questions involved in appellant's bill of exceptions number 7, in regard to what transpired in the jury room, the same is not likely to occur on another trial of the case; so we pretermit any discussion thereof.

For the error of the court in admitting the testimony of Rotan, as to the statements of Clark to him, denying the execution of said note, the judgment is reversed and the cause remanded.

*Reversed and remanded.*