L. HIMMELFARB v. THE STATE.

No. 3415.   Decided February 3, 1915.

Rehearing denied March 3, 1915.

1.—Theft—Bailment—Indictment—Description.

Upon trial of theft by bailment, where the indictment alleged that the defendant bound himself with the money he received from prosecuting witness

to buy certain bar room fixtures and whisky for the prosecuting witness, it was not necessary to allege either the kind, character, quality, name, etc., of the fixtures or the quantity of whisky.

### 2.—Same—Sufficiency of the Evidence.

Where, upon trial of theft of money delivered to the defendant by the prosecuting witness by virtue of a contract of bailment, the evidence sustained the conviction, under a proper charge of the court, there was no reversible error.

### 3.—Same—Statement of State's Case.

Upon trial of theft under bailment, there was no error in permitting the attorney representing the State to make a preliminary statement of what the State expected to prove. Following House v. State, 75 Texas Crim. Rep., 338.

### 4.—Same—Argument of Counsel—Poetical Quotation.

Where, upon trial of theft under bailment, the attorney representing the State in his argument to the jury said, "Cast your mind back thousands of years to another contract made by one of defendant's kind with one of your kind, and he at that time demanded his pound of flesh," and the trial judge immediately withdrew said remarks from the jury and reprimanded the counsel, who admitted that he had used improper argument, there was no reversible error.

### 5.—Same—Rule Stated—Argument of Counsel.

The rule is that before this court will reverse a conviction because of remarks of prosecuting counsel, it must clearly appear that such remarks were improper; that they were of a material character and calculated to injuriously affect the defendant's right. Following Pierson v. State, 18 Texas Crim. App., 524, and other cases.

### 6.—Same—Rule Stated—Argument of Counsel—Practice.

Where objectionable remarks are made in argument by the prosecuting attorney, this court will not reverse unless the remarks were objected to at the time and the defendant requested a special charge in writing instructing the jury to disregard it, and the court refuses such charge, to which refusal defendant takes a bill of exceptions. Following Hatchell v. State, 47 Texas Crim. Rep., 380, and other cases.

### 7.—Same—Evidence—Rebuttal.

Where, upon trial of theft of money under bailment, defendant claimed that he had made application for liquor license for the prosecuting witness to be paid out of the money which he received from the latter, there was no error in permitting a State's witness to testify that defendant had made no application for license, and that a colored man had inquired of him whether defendant had done so.

### 8.—Same—Evidence—Want of Consent—Rebuttal.

Upon trial of theft of money under bailment, there was no error in permitting prosecuting witness to show his want of consent to the defendant to convert said money, neither did the court err in permitting the State to introduce in evidence a certain bill of lading for a carload of pool tables which defendant bought on his own account.

### 9.—Same—Evidence—Case Stated—Interest—System.

Upon trial of theft of money under bailment, there was no error in admitting testimony showing the whole transaction and the dealing between prosecuting witness and the defendant from the time their negotiations began to the time they ended in order to show system and intent in the illegal conversion of the money obtained by the defendant. Following Kaufman v. State, 70 Texas Crim. Rep., 438, and other cases.

**10.—Same—Charge of Court—Venue.**

'Where, upon trial of theft of money under bailment, the defendant complained of the court's charge on venue, on the ground that the evidence did not show that the alleged conversion occurred in the county of the prosecution, but the evidence showed that such conversion did occur in the county of the prosecution, there was no error on that ground.

**11.—Same—Venue—Rule Stated—Presumption.**

It is not essential to prove venue beyond a reasonable doubt, and the same may be proved by circumstantial evidence, and the court will presume that the venue was proved in the court below unless such matter was an issue and it affirmatively appears by bill of exceptions properly signed and proved and incorporated in the record. Following McGlasson v. State, 38 Texas Crim. Rep., 351, and other cases.

**12.—Same—Charge of Court—Conversion.**

It was not necessary, under trial of theft by bailment, that it be shown that the defendant received the alleged money both for the purposes of buying fixtures and whisky; either would suffice, and there was no error in the court's charge on that issue. Following Terry v. State, 62 Texas Crim. Rep., 73, and other cases.

**13.—Same—Bailment—Illegal Transactions—Conversion.**

The contention, that as the alleged money the prosecuting witness turned over to the defendant was to be used to buy whisky and fixtures in operating a saloon in the name of the defendant for the benefit of prosecuting witness was in effect an illegal transaction, and, therefore, defendant could not be prosecuted for the conversion of said money is untenable.

Appeal from the District Court of Galveston. Tried below before the Hon. Robt. G. Street.

Appeal from a conviction of theft under bailment; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Geo. G. Clough* and *King & Hughes,* for appellant.—On question of venue: Abbey v. State, 34 S. W. Rep., 930.

On question of court's charge on intent: Curtis v. State, 108 S. W. Rep., 380; Harris v. State, 117 S. W. Rep., 839; Clark v. State, 59 Texas Crim. Rep., 248, 128 S. W. Rep., 131.

On question of argument of counsel: Bearden v. State, 46 Texas Crim. Rep., 144; Davis v. State, 54 id., 236; Jenkins v. State, 49 id., 457; Battles v. State, 63 id., 147.

On question of argument on nationality of defendant: Smith v. State, 55 Texas Crim. Rep., 563; McKinley v. State, 52 id., 182; Turner v. State, 39 id., 322; Parks v. State, 35 id., 381.

On question of illegal bailment: Beer v. Landman, 88 Texas, 450; Davis v. Sittig, 65 id., 497; Reed v. Brewer, 90 id., 144.

*C. C. McDonald,* Assistant Attorney General, and *Chas. H. Theobald,* County Attorney, for the State.—On question of venue: Clark v. State, 23 Texas Crim. App., 612; Cannon v. State, 38 Texas Crim. Rep., 322.

On question of making preliminary statement: House v. State, 171 S. W. Rep., 206.

On question of indictment: Elton v. State, 40 Texas Crim. Rep., 339.

On question of admitting testimony of entire transaction: Dugat v. State, 72 Texas Crim. Rep., 39, 160 S. W. Rep., 376.

On question of argument of counsel: Leggett v. State, 65 S. W. Rep., 516; Hicky v. State, 62 Texas Crim. Rep., 568, 138 S. W. Rep., 1051; Melton v. State, 63 Texas Crim. Rep., 573, 140 S. W. Rep., 230; Majors v. State, 63 Texas Crim. Rep., 488, 140 S. W. Rep., 1095.

PRENDERGAST, Presiding Judge.—Appellant was convicted of the theft of money delivered to him by M. G. Hubert by virtue of a contract of bailment.

1.   The indictment follows substantially the form therefor prescribed by Judge White in section 1501 of his Annotated Penal Code.   It alleged that on or about January 20, 1914, said Hubert delivered $300 to him to buy certain bar-room fixtures and whisky with which he bound himself and agreed to purchase for Hubert.   It was unnecessary for the indictment to allege either the kind, character, quality, name, etc., of the fixtures, or the quantity of whisky, and the court did not err in overruling appellant's motion to quash the indictment on that ground.

2.   It is unnecessary to give any extended statement of the evidence. It was amply sufficient to establish, and for the jury to believe therefrom, that said Hubert, a negro, and a stranger, arrived in Galveston, with his wife, on December 24, 1913.   He had formerly lived in Trinity County and had there made and then had about $1500 in money.   Part of it he left on deposit with the bank in Trinity County and took another portion with him, or afterwards transferred part of it, to the Hutchings-Sealy & Co. Bank in Galveston.   Hubert was in bad health and went to Galveston to be treated by a physician there.   On January 5, 1914, he saw carpenters working on a building at the corner of Twenty-eighth and Church Streets in Galveston.   He learned, upon inquiry, from them that appellant owned or controlled said building.   Appellant was pointed out, and he introduced himself to him.   He told appellant that he was a stranger from Groveton, in Trinity County, and there where he could be attended by his doctor and that he expected to open a restaurant or saloon.   Appellant asked him if he had the money, and upon his telling him he had, appellant told him that a saloon would be the thing and agreed to rent him said house for $100 per month for a saloon.   Appellant asked him how much money he had and he told him enough to open a saloon, without telling him the exact amount.   Thereupon appellant made an engagement with him to meet him that night at his house to go over the matter, which he did.   Appellant then figured for him about how much it would take to open up a saloon, buy the fixtures, the liquor and other stock, procure the license, etc., and figured that it would take $1200 to $1500; that it would take $300 or $400 to buy the bar fixtures, $300 for liquor, $750 for the license, etc.   After going over this matter, appellant engaged to meet him the next day to arrange for the business.   They did meet the next day.   Hubert informed appellant he had some of his money in said bank.   He took Hubert in

his buggy down to that bank, waited out in the buggy while Hubert went into the bank, drew a check and got $375 cash, having some money, in addition, with him. As soon as he got this money and appellant saw it, he engaged to meet him at the interurban train and go to Houston with him that evening to buy the bar fixtures, Hubert taking the money along with him. After they got to Houston appellant took him to a negro rooming house, procured a room, they went therein and Hubert then delivered to him $380 cash with which he was to buy, and agreed to buy therewith, the said bar fixtures. Appellant swore he took that money back to Galveston with him when he returned the next day. Hubert paid their expenses to Houston and return. Hubert returned from Houston to Galveston that night. On his return appellant claimed to Hubert that he had bought said bar fixtures while in Houston. He swore on this trial that he did not then or at any other time buy any bar fixtures whatever with that money or any other that Hubert afterwards delivered to him. Appellant and Hubert met in Galveston from day to day thereafter for weeks and discussed the procuring of the necessary fixtures, furniture, stock, etc., for the opening and operation of said saloon. On January 14, 1914, appellant again took Hubert to said bank and had Hubert to draw from said bank and turn over to him $600 with which he said he would procure the license to run said saloon. Appellant swore that he applied to Mr. Cheesborough, the postmaster, some three or four times to get said license. Mr. Cheesborough swore that he never applied to him at any time for that purpose. Appellant on the trial swore that he never got any license from Mr. Cheesborough or anybody else with that money or any other of Hubert's and got no such license at all. On January 20, appellant had Hubert to again get from said bank in Galveston $300 in cash and turn it over to him with which he said he would buy the stock of whisky for said saloon. He never bought a drop of whisky for Hubert with that money or any other money that Hubert turned over to him. He himself swore on this trial that he never bought any liquor therewith. Later he procured from Hubert another $100 in cash with which he said he would at once buy some cigar showcases to use in said saloon business. Still a little later he procured from Hubert another $50 in money with which he said he would buy the cigars for said saloon business. At the time he procured the said $100 Hubert told him that he had about stripped him of money. Appellant told him when he got the $50 for the cigars that he wanted $100 for that purpose, but Hubert claimed that he only let him have for that purpose at the time $50, and that he had to get that $50 from his wife. Doubtless, it thereupon appeared to appellant that he had gotten all of the money from Hubert that Hubert was going to let him have, or all that he did have. Appellant, by his own testimony, never used one cent or any other amount of all the money that Hubert turned over to him under the bailments above specified, for procuring any of the articles for which he got the money from Hubert. He swore on this trial, in effect, that he used some of the money to pay his debts

and for other purposes and to buy a carload of second-hand pool tables. Appellant admitted that he got $1250 of Hubert's money for the purposes above stated but denied that Hubert paid him the last two items of $100 and $50, respectively. From time to time, soon after appellant returned from Houston just after January 6, 1914, he took Hubert to the railroad freight office in Galveston and inquired of the agent for a carload of bar fixtures which he told Hubert he had shipped to him (appellant) from Houston, representing from day to day and time to time to Hubert that he had bought said fixtures in Houston on the occasion they went there and expected them at the railroad depot in Galveston. As stated, he swore on the stand that he never bought any fixtures at Houston or elsewhere with Hubert's money or any part of it or any such fixtures at all. The State produced, identified and introduced in evidence a bill of lading to a concern in Houston for a carload of second-hand pool tables shipped in the name of that concern to Galveston to their order and to notify appellant. Appellant swore that he had to go to the bank in Galveston to get that bill of lading and at the time, in order to get it, he had to pay the bank for said bill of lading, which he did, and he at once took that bill of lading to the railroad depot at Galveston and got the carload of second-hand pool tables which he paid for at that time out of Hubert's money as the jury was authorized to find from the testimony. He said he paid $400 for this car of pool tables. After he had gotten all of Hubert's money for the purposes specified, Hubert was after him from day to day to fix and open up said saloon, and appellant was delaying him from time to time until he got all of his money, and then it dawned upon Hubert,—the old negro,—that appellant was not going to fix up any saloon whatever and he never did. He thereupon demanded his money back. The appellant, as the jury were authorized to believe from the testimony, in the form of a bill of sale to Hubert, gave him a mortgage on another old second-hand set of pool tables for an expressed consideration of $1250, which he testified he had been himself running at a certain location in Galveston for many years. And he also, nearly two months after executing said mortgage, had Hubert to execute to him a lease to said old pool tables for a year at a monthly rental of $5 a month. All of this was for the purpose, as the jury were clearly authorized and justified to believe, of attempting to manufacture a defense and cover up the crimes he had committed.

3. In addition to the district attorney representing the State, other attorneys also were employed to prosecute. When the case went to trial one of the attorneys for the State desired to make and did make, in proper time, a preliminary statement of what the State expected to prove. Appellant objected to this. Clearly the State had the right, under the statute and decisions, to make such statement. Art. 717, subdiv. 3, C. C. P.; House v. State, 75 Texas Crim. Rep., 338, 171 S. W. Rep., 206.

4. Appellant's bills Nos. 2, 3, 4 and 8, in very meager statements, complain of the argument of the prosecuting attorneys. In No. 2 the

language complained of is this: "Cast your mind back thousands of years to another contract made by one of defendant's kind with one of your kind, and ̀he at that time demanded his pound of flesh." In the third, the language complained of is this: "That the defendant at the very time that he got the first $380 in Harris County then and there conceived the idea of converting all the money this old negro had to his own use." In the fourth the language complained of is this: "Gentlemen, Mr. Fuller (meaning his partner) and I are not going to get anything out of this. We can not get a dollar out of this from the defendant." In the eighth the language complained of is this: "This man (the defendant) did not have any sympathy for this negro man when he took from him every 'dollar he had in the world." Appellant requested no charge to the jury not to consider any or either of these statements. He merely objected and took his bills of exceptions. The second shows that as soon as the matter was called to the attention of the trial judge and he understood it, he sustained appellant's objection to that language used, reprimanded the attorney, and instructed the jury not to allow the language to excite any prejudice in their minds against the appellant, and the attorney withdrew the remarks, stated to the jury that he had no idea of influencing or impassioning them, that the remarks were provoked, that he was sorry he made them, that they were highly improper, and should not have been made, though the provocation was great and for the jury not to consider them.

In our opinion neither all, nor any of these bills present any reversible error.

This court, through Judge Wilson, in Pierson v. State, 18 Texas Crim. App., 524, p. 564, said: "It has become quite common to except to the remarks of counsel for the State in their addresses to the jury. We find such exceptions in the majority of contested cases that come before us. If we had sustained all these exceptions, the effect would have been to have virtually closed the mouths of prosecuting attorneys. While argument should be restricted legitimately, it should not be so unreasonably limited as to render it ineffectual. The State has rights in this respect as well as defendants. And in view of the frequency of exceptions of this character, we will take occasion here to say that, before we will reverse a conviction because of remarks of prosecuting counsel it must clearly appear to us: (1) That the remarks were improper, and (2) that they were of a material character, and such as, under the circumstances, were calculated to injuriously affect the defendant's rights." The Pierson case, supra, has many times been cited and approved by this court. In House v. State, 19 Texas Crim. App., 227, wherein a much worse statement was complained of, by the district attorney, Presiding Judge White said: "We construe the remark to be not so much evidence of a desire to make use of foreign matter to the injury and prejudice of defendant as an impassioned expression, highly exaggerated it may be, but springing inadvertently from the heat of debate. If all such remarks were held reversible error, but few convictions would stand the test where the case had been hotly contested

by able and zealous counsel in the courts below." Again, in Tweedle v. State, 29 Texas Crim. App., 586, this court, in discussing the argument of the district attorney in that case, through Judge Davidson, said: "Concede that this argument was improper, it does not follow that the judgment should be reversed for this cause. The remarks must not only be improper, but they must be of such a nature as would be clearly calculated to prejudice the rights of the defendants. To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true. House v. State, 19 Texas Crim. App., 227; Bass v. State, 16 Texas Crim. App., 62." See, also, McConnell v. State, 22 Texas Crim. App., 354; Young v. State, 19 Texas Crim. App., 536; Frizzell v. State, 30 Texas Crim. App., 42; Rahm v. State, 30 Texas Crim. App., 310; Tipton v. State, 30 Texas Crim. App., 530; Walker v. State, 28 Texas Crim. App., 503; Love v. State, 35 Texas Crim. Rep., 27.

It is also well established that where even objectionable remarks are made in argument by the prosecuting attorneys, this court will not reverse unless the remarks were objected to at the time and the appellant requests a special charge in writing to the jury to disregard it, and the court refuses such charge, to which refusal he takes a bill. Hatchell v. State, 47 Texas Crim. Rep., 380; Felder v. State, 59 Texas Crim. Rep., 144, 127 S. W. Rep., 1055; Kennedy v. State, 19 Texas Crim. App., 618; Young v. State, 19 Texas Crim. App., 536; Lancaster v. State, 36 Texas Crim. Rep., 16; Dies v. State, 56 Texas Crim. Rep., 32; Rahm v. State, 30 Texas Crim. App., 310; Garello v. State, 31 Texas Crim. Rep., 56; Vann v. State, 48 Texas Crim. Rep., 11; Wright v. State, 37 Texas Crim. Rep., 146, and Franklin v. State, 38 Texas Crim. Rep., 346; Clayton v. State, 67 Texas Crim. Rep., 311, 149 S. W. Rep., 129.

In the Hatchell case, supra, this court, through Judge Henderson, said: "Bills 3 and 4 embody exceptions to the argument of the district attorney. In the first of these bills it appears that the district attorney stated, 'This defendant is guilty of one of the most cruel and diabolical crimes ever committed in this county; and you can not as good citizens of this county turn this defendant loose, and I want to tell you, if you do, every good respectable citizen within the borders of Shelby County will hang their heads in shame.' The first portion of this statement of the district attorney may have been a proper deduction from the testimony and may have been permissible. As presented, we can not say it was not. The last portion, however, tells the jury, in substance, that unless they convict appellant every good and respectable citizen within this county would hang his head in shame, could not be authorized from the testimony. It has been held that an invocation or appeal to the jury by a menace of this sort, is not permissible. However, *no charge in writing was requested on the subject and refused by the court;* and we do not regard it of that character which would authorize a reversal. 'And again, the district attorney in his argument is shown to have made

these remarks,—'The defendant, unlike the hyena who digs in the grave for the body of the dead and buried, while the defendant revels in living streaming blood of his victim; that he took the life of old man Judge and walked away from his lifeless body with blood dripping from his hands, calm, cool and deliberate; and his attorneys come here and ask you to acquit him. It may be that defendant's counsel have some one man on this jury whom they expect to hang it, and no doubt expect by such means to induce and persuade someone to hang it, but you, Askew, you, Wes Darnell, nor you, Bob Williams, can't afford to hang the jury.' The court explains as to this latter portion that the counsel for defendant in their address to the jury had called names of Turner and others, and the district attorney in referring to that matter had used the language. We held in Kugadt v. State, 38 Texas Crim. Rep., 681, referring to defendant as a hyena, in the connection in which it was used, did not constitute reversible error. In that case, the court immediately reprimanded counsel for the State and instructed the jury to disregard the same. In this case, however, while there was an attempt to differentiate between defendant and a hyena, it was rather to the disparagement of defendant. The court's explanation, that the district attorney referred to the jurors by name, because defendant's counsel had done so, may explain that matter. But it hardly explains the reference that appellant's counsel had succeeded in stocking the jury with some man to hang it. These remarks were uncalled for and reprehensible; *but no written request was made of the court, instructing the jury to disregard the same.* We do not believe that they are of that character, as to cause a reversal, *in the absence of such requested written instruction, the refusal of the court to give the same, and exception reserved thereto.*"

5. The court did not err in permitting the State's witness Cheesborough, as objected to by appellant's bill No. 5, to testify that appellant did not apply to him for a saloon license. Nor in permitting him to testify that some colored man inquired of him whether or not appellant had so applied to him for a saloon license, even though he could not identify said Hubert as the negro who did so ask him about it, the testimony showing that appellant told said Hubert that he had so applied to Cheesborough for the license and Hubert showing that thereupon, to ascertain whether or not he had done so, he inquired of Cheesborough whether he had,—the testimony all identifying the license for a saloon at the location which appellant agreed to rent to Hubert for the purpose of opening a saloon therein. Neither did the court err in permitting the State to ask, and Hubert to answer, that he did not consent that the defendant could convert the said $300 he had turned over to him, as objected to by appellant's bill No. 6. Neither did the court err in permitting the State to introduce in evidence the said bill of lading for the carload of second-hand pool tables, as shown in the statement above.

6. Appellant, in his tenth bill of exceptions, complains of the court admitting the testimony of Hubert and other witnesses to the whole transaction and dealing between Hubert and appellant from the time

their negotiations begun to the time they ended. This bill is quite lengthy and gives the questions and answers of most of the direct testimony of these several witnesses. All this testimony was admissible and material for the purpose of showing system and the intent of the appellant in getting and converting to his own use the $300 with which the indictment charged him, the court in his charge expressly restricting it for that purpose. They were all so interwoven and necessary to be shown to determine the main issues in this case. The testimony shows a continuous transaction between them from first to last and the jury could not understand the issues in this case without such testimony. It is unnecessary to state or quote this bill in full. Kaufman v. State, 70 Texas Crim. Rep., 438, 159 S. W. Rep., 60; Dugat v. State, 72 Texas Crim. Rep., 39, 160 S. W. Rep., 377, and authorities cited in those cases.

7. Appellant had some objections to the court's charge and requested some charges which the court refused. We have carefully considered all of these matters and none of them present any error. We think it unnecessary to state them. Among appellant's complaints thereunder is one that the evidence shows that if there was a conversion of the $300 specified in the indictment that the conversion occurred in Harris and not in Galveston County. The reverse of his contention is true. The particular $300 charged to have been converted in the indictment is the $300 that was delivered to appellant by Hubert on January 20, 1914. The evidence in no way even remotely tends to show that appellant ever had this money or any of it, or converted it or any of it, in Harris County, but, on the contrary, that it all occurred in Galveston County. The only money of Hubert's which he is every shown to have had in Harris County is the $380 delivered to him by Hubert on January 6, 1914; and appellant himself swore that he took that money back to Galveston with him, and all the testimony shows that he converted all of appellant's money in Galveston County and not $1 of it in any other county than Galveston. It is true that he is shown to have bought a carload of second-hand pool tables from a party in Houston, but the evidence does not tend to show that he even paid any part of that money in Harris County for those pool tables, but the evidence shows that whatever he paid for said carload of pool tables he paid in Galveston County and not elsewhere. The court's charge affirmatively required the jury to believe beyond a reasonable doubt that appellant converted said money in Galveston County, with other requisites, before they could find him guilty. As to venue, this is more than the law requires.

It is the settled law of this State that it is not essential to prove venue beyond a reasonable doubt; that the doctrine of reasonable doubt does not apply to the issue of venue. Ballow v. State, 42 Texas, 261; McReynolds v. State, 4 Texas Crim. App., 327; Deggs v. State, 7 Texas Crim. App., 359; Achterberg v. State, 8 Texas Crim. App., 463; McGill v. State, 25 Texas Crim. App., 499; Cox v. State, 28 Texas Crim. App., 92; Abrigo v. State, 29 Texas Crim. App., 143. Venue may be proved

by other than positive testimony; if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged, it is sufficient. Hoffman v. State, 12 Texas Crim. App., 406; Bowman v. State, 38 Texas Crim. Rep., 14. It may be as effectually proved by circumstantial as by direct evidence. McGill v. State, supra; Cox v. State, supra; McGlasson v. State, 38 Texas Crim. Rep., 351; Kugadt v. State, 38 Texas Crim. Rep., 681; Nance v. State, 17 Texas Crim. App., 385.

Again, our statute, article 938, Code of Criminal Procedure, says: "In all cases the (appellate) court shall presume that the venue was proven in the court below; . . . unless such matter was an issue in the court below, and it affirmatively appears to the contrary by a bill of exceptions, properly signed and allowed by the judge of the court below . . . and incorporated in the transcript as required by law." No such bill is contained in this record. McGlasson v. State, 38 Texas Crim. Rep., 351; Scott v. State, 42 Texas Crim. Rep., 607; Belcher v. State, 72 Texas Crim. Rep., 646, 161 S. W. Rep., 459.

8. There is no merit in appellant's contention that by the charge of the court the jury was authorized to convict him for the conversion of the identical $300 when it was not received by him for the purpose of buying both fixtures and whisky, but for whisky alone. It was not necessary that it be shown that he received the money for both purposes. Either would suffice. Terry v. State, 62 Texas Crim. Rep., 73, and cases cited; Alderson v. State, 2 Texas Crim. App., 10; Edwards v. People, 26 Colorado, 541; Edson v. State, 148 Ind., 283; 1 Whart., Crim. Ev., sec. 129; Robinson v. State, 62 Texas Crim. Rep., 646; Arnold v. State, 74 Texas Crim. Rep., 269, 168 S. W. Rep., 122, and cases cited therein.

9. In appellant's brief he contends, in effect, that as the money Hubert turned over to him was to be used to buy whisky and fixtures in operating a saloon in Galveston in the name of appellant, but for Hubert's benefit, was in effect to be an illegal transaction, and as the bailment was illegal, therefore appellant could not be convicted for converting Hubert's money and be guilty of the theft thereof. We think there can be no merit whatever in this contention. It is unnecessary to discuss it at all.

We have carefully read and studied the record and briefs in this case. In our opinion there is no error in the trial which would authorize or justify this court to reverse it. Therefore the judgment will be affirmed.

*Affirmed.*

[Rehearing denied March 3, 1915.—Reporter.]