### Perry Morrison v. The State.

*No. 1203.　Decided May 5th, 1897.*

**1.　Aggravated Assault—Recognizance on Appeal.**

Where defendant was convicted of aggravated assault, under an indictment which charged an assault with intent to murder, a recognizance on appeal, which recited that he was charged with an aggravated assault and convicted of an aggravated assault, was sufficient.

**2.　Same—Evidence of Previous Difficulty to Show Malice—Right of Defendant to Prove Details in Rebuttal.**

On a trial for aggravated assault, where the evidence was directly conflicting and evenly balanced as to who was the aggressor, and the State, to show malice on the part of defendant, was permitted to prove, by the prosecutor, a previous difficulty between him and defendant about a year and a half before the assault in question. Held: That defendant had the right to prove who was the aggressor in said previous difficulty, and so much of the details of the same as would show that he acted solely in self-defense at that time. Such evidence was admissible as tending to corroborate defendant's version of the assault charged against him.

**3.　Same—Evidence of Defendant's Reputation as a Peaceable Law-Abiding Man—Limiting the Number of Witnesses.**

On a trial for aggravated assault, where defendant had introduced three witnesses as to his good reputation for peace and quietude, and the court stated, that he would not permit any other testimony upon that issue until the State had introduced testimony against him. Held: It was error for the court, without timely warning, to thus restrict the number of witnesses and deprive him of other witnesses who had known him from childhood and were competent to testify on said issue; and, such evidence was especially admissible, under the facts of the case, as tending to show who was the aggressor.

**4.　Impeachment of Witness—Right to Prove His General Reputation for Truth and Veracity.**

Where an attempt has been made to impeach a witness, by showing his contradictory statements, it is admissible, to sustain him by proof of his good reputation for truth and veracity in the neighborhood in which he lives.

**5.　Same.**

Where there is no evidence tending to show self-contradiction as to the testimony of a witness, it is not competent to introduce evidence of the good reputation of such witness for truth and veracity.

**6.　Charge as to Self-Defense—Practice.**

Where a defendant is entitled to a charge on self-defense at all, the charge should be clear and distinct, and not encumbered and entangled with provisos and qualifications. If there are contingencies that tend to limit the right of self-defense, these qualifications should be given in separate and distinct clauses.

Appeal from the District Court of Grayson.　Tried below ·before Hon. Don A. Bliss.

Appeal from a conviction for aggravated assault; penalty, a fine of $25.

The case is fully stated in the opinion.

*J. D. Woods* and *C. B. Randall*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was tried on an indictment charging him with an assault with intent to murder, was convicted of an aggravated assault, and his punishment fixed at a fine of $25, and prosecutes this appeal. The Assistant Attorney-General moves to dismiss the appeal, on the ground that the recognizance does not recite the offense with which appellant was charged. We do not think the motion is well taken. Appellant was charged, it is true, with an assault with intent to murder, but this includes an aggravated assault, and the indictment in effect, charged such an aggravated assault, and this was the offense of which the defendant was convicted. So the recitation in the recognizance that he was charged with an aggravated assault, and convicted of an aggravated assault, is sufficient. See, Warnock v. State, 6 Tex. Crim. App., 450; Jones v. State, 8 Tex. Crim. App., 365. The record contains thirty bills of exception, some of them quite lengthy. By far the greater number present no errors, and some of them are upon trivial matters, which could not have influenced the finding of the jury. Such a voluminous record of bills of exception can serve no good purpose. Unquestionably the preparation of such a number of bills imposes a great burden upon counsel in the case, and upon the judge in passing on the bills; and it renders the task of this court more onerous, as it is our duty to read the bills of exception in order to see what they contain. By a little painstaking care, with an appreciation of the points in the case, counsel, in preparing bills of exception, while saving themselves much labor, would relieve this court of much onerous work. Three or four bills of exception taken upon rulings of the court in this case present all the errors contained in the record, and we will address ourselves to the questions contained in said bills. In order to present these matters, we will first briefly state the case for the State and the defendant. There were but four witnesses to the assault—two for the State and two for the defendant. The State proved substantially by the prosecutor, Ben Strickland, and the witness, Elwood Ford, that on the night of the difficulty there was a meeting in the neighborhood to organize a singing school; that a number of the neighbors were present; that they attended, and on the breaking up of said meeting they left, going towards the home of said Strickland, ahead of the others; that they had arrived in front of the house of said Strickland, and stopped to talk in the lane. The prosecutor, Strickland, it seems was walking and Ford was riding. Ford got down, and was holding his horse by the bridle, and while they were standing there defendant, Perry Morrison, and his brother, Charley, came up, on their way home, and, without saying anything, they immediately assaulted the prosecutor, Ben Strickland, with clubs. Ford attempted to interfere, and they also assaulted him. The parties, defendant and Strickland, fought from about the center of the lane towards the gate, which was on the north side, next to the house of Strickland; Strickland retreating, and defendant following him up, beating him with a club, and, as Strickland states, "holding a pistol in one hand, as if to strike, and beating him with the

club in the other hand." When he got near the gate prosecutor grabbed the pistol out of the hands of defendant, and then immediately assaulted him with the pistol. Defendant in turn retreated towards the middle of the lane, the prosecutor following him up, striking him with the pistol. When they got out in the middle of the lane the testimony tends to show that Charley Morrison engaged in the difficulty, and knocked the prosecutor down once or twice with a club. The prosecutor then shot at one or the other with the pistol which he had taken from the defendant. It appears that prosecutor was knocked down, and the pistol wrested from him, and he was left disabled in the road. In the meantime Ford retreated to the house of Strickland, which was near by, and was immediately followed by the prosecutor. Prosecutor testifies that directly after the difficulty was over he felt a stinging sensation, and discovered that he had been cut. He was wounded in a number of places by a knife—once in the back, once or twice in the shoulder, and once on the right side in front, severing one of his ribs. That when they knocked him down the last time he lay there about a minute before he could get up. The defendant and his brother, Charley, both testified in the case, and their testimony is almost exactly opposite to that of the prosecutor and Ford. They testify: That when they came up to where prosecutor and Ford were, in the lane, that said parties immediately assaulted them with clubs. That the prosecutor began beating him (defendant) with a club, and Elwood Ford was also striking at him with a club. That he was knocked down, cut up, and beaten. That he finally caught hold of the club in some way, and began to use it. Strickland finally drew a pistol, and knocked him (defendant) down with it. That he lost his stick, and then used his pocketknife. That Strickland knocked him down again, and that he got up and clinched with Strickland, and told him not to kill him, and about that time his brother, Charley, ran up, and asked Strickland not to kill his brother. Strickland said, "I will kill you," and then fired at Charley, who was close to him. That he (defendant) then clinched with Strickland, and cut him several times with his knife. That he struck fast and hard, and wheeled him around in the scuffle, and then jerked loose from him, and ran away as fast as he could, leaving his hat behind him. The testimony of his brother, Charley, was to the same effect. The evidence of other witnesses showed that the prosecutor, Strickland, was severely cut, as above stated, and confined to his bed for some ten days. The evidence also showed that defendant had some cuts on his body, and that his clothes were cut, which the witnesses testified was evidently done with some sharp instrument. Defendant also had some bruised and contused places on his face and head. His hat, which was found on the ground, also appeared to be cut with some sharp instrument. The defendant and his brother both denied that they had a pistol, that the prosecutor did not take any pistol from the defendant, but that said pistol was his (prosecutor's) own pistol. Defendant also testified that he cut the prosecutor with an ordinary pocket-knife. There was some evidence show-

ing that a large dirk knife, with the point of the blade bent, was found by the brother of the prosecutor on the ground where the difficulty occurred, early the next morning. This is a sufficient statement of the facts to show the bearing of the legal questions raised. On the trial the State proved by the witness, Ben Strickland, that some time in January, 1894, about a year and a half before the alleged assault in this case, the defendant had a difficulty with him (Strickland). Upon cross-examination the defendant offered to prove by said witness that in said difficulty the prosecutor had waylaid the defendant, and assaulted him on the public highway; that he was entirely the aggressor, and that he, in company with his father and Will Strickland, his brother, in said difficulty, attacked him (defendant) with great violence, and beat and bruised him, inflicting considerable injury on the defendant; that said assault on defendant was unprovoked by him, and that defendant did nothing in said difficulty except to act in self-defense, and was badly worsted; that said witness, Strickland, was prosecuted for said assault, and pleaded guilty to the charge; and that the defendant was never charged with any violation of the law in reference to said difficulty. The State objected to this evidence, on the ground that it was irrelevant and immaterial. The court in that connection remarked, in the presence of the jury, that it made no difference who was the aggressor nor what were the circumstances of the difficulty; that said testimony of a former difficulty was admitted by the court on the issue of malice and motive, and could be considered by the jury for such purpose alone. The defendant not only objected to the refusal of the court to admit said testimony, but to the remarks of the court made in that connection. This same character of testimony was offered on the part of the defendant to be proved by Cora Morrison, to-wit: that she was present at the difficulty between her brother, Perry Morrison, and defendant, in January, 1894, and the offer by her was to prove the details as heretofore stated—that is, that the prosecutor was the aggressor in said difficulty. Ordinarily, it is not proper to go into the details of a former difficulty, although between the same parties, unless such former difficulty was so near in point of time to the difficulty on which the defendant is being tried as to be a part thereof; but evidence of the details of such former difficulty, not being a part of the res gestæ, may become relevant—that is, when such former difficulty would serve to shed any light upon the transaction then being investigated. Mr. Stephen says: "Evidence may be given in any proceeding of any fact in issue, and of any fact relevant to any fact in issue." See, Steph. Dig. Ev., p. 5. And again he says: "Every fact which is part of the same transaction as the facts in issue is deemed to be relevant to the facts in issue, although it may not be actually in issue, and although, if it were not part of the same transaction, it might be excluded as hearsay. Whether any particular fact is or is not part of the same transaction as the facts in issue is a question of law upon which no principle has been stated by authority, and on which single judges have given

different decisions." Id., p. 6. Again: "Facts necessary to be known to explain or introduce a fact in issue, or relevant or deemed to be relevant to the issue, or which support or rebut an inference suggested by any such fact, * * * or which show the relation of the parties by whom any such fact was transacted, or which afforded an opportunity for its occurrence or transaction, or which are necessary to be known in order to show the relevancy of other facts, are deemed to be relevant, in so far as they are necessary for those purposes respectively." Id., p. 20. Tested by these principles, we believe the testimony was relevant. The State had proved the previous difficulty for the purpose, as explained by the judge, of showing the motive or malice on the part of the defendant. While it was competent for that purpose, it was also competent then to show any facts of said previous difficulty, showing how it began, who brought it on—that is, who was the aggressor in said previous difficulty—and if the prosecutor on a former occasion made an unprovoked assault on the defendant such testimony would be relevant to show who was the aggressor in the subsequent difficulty. In this case, the evidence on this issue, as we have seen, was very evenly balanced, but two witnesses testifying on either side; those for the State making a case, at least, of an unprovoked, aggravated assault on the part of the defendant, and those for the defendant making a complete case of self-defense, so far as he was concerned. Now, in this condition of the case, the court admitted the testimony of the former difficulty, as he says, to show motive or malice on the part of the defendant. Certainly, if testimony of such former difficulty was relevant for the purpose of affording a motive on the part of the defendant for making the attack, it was competent for the defendant to show, in rebuttal of such testimony, that appellant was not the wrongdoer, not the aggressor in the previous difficulty, but that he was set upon by the prosecutor, and acted solely in self-defense. In common fairness, we believe that defendant was entitled to this testimony, and it was rendered relevant on his behalf by the action of the State in introducing the evidence of said former difficulty against him. Such testimony was relevant, as tending to show, under the circumstances of this case, who was most likely to have been the aggressor, and who brought on the difficulty charged against the defendant, and for which he was being tried. Whatever it was worth, the defendant was entitled to it, as tending to corroborate his version of the assault charged against him. On the trial defendant offered testimony as to his general reputation for peace and quietude being good. On this branch of the case three witnesses were introduced by him, who testified to the above effect. At this juncture the court interposed an inquiry of the State, if they intended to introduce any evidence against the credit of the defendant, to which the District Attorney at first stated, "We do not know," but then replied that they would not. The court then stated that he would not permit any other testimony of the defendant's character to be introduced by the defendant until the State had introduced testimony against him. Defendant's counsel then

stated that they did not anticipate this ruling; that they had a number of witnesses to prove the good character of the appellant in regard to peace and quietude in the neighborhood where he lived, and they could not anticipate the course the State would pursue; that, if they had known the court intended to limit this character of evidence, they would have put on the stand, instead of the three witnesses, three others who lived in the immediate neighborhood of the defendant, and had known him since his childhood; the others who had been introduced not being so familiar with him. But the court adhered to its ruling, and refused to admit any further testimony on the issue. This action of the court is assigned as error. We believe that it is within the province of the court to limit the number of witnesses upon an issue of this character, but such limitation should be timely. If, when the court's attention was first directed to the fact that the issue was being made, he had then limited the number of witnesses to a side, or, in case the State proposed to use no witnesses, he had restricted the defendant to a reasonable number of witnesses, unless there appears a clear abuse of discretion in the limitation as to the number of witnesses, and that defendant suffered some injury on that account, this court would not revise the action of the lower court. In this case, however, it occurs to us that the action of the court was not timely; and on the suggestion made that other witnesses present were more intimate, and lived nearer appellant, than those introduced, he should have allowed the introduction of a few other witnesses on that issue. The vital question in this case was, who, under the circumstances in proof, was most likely to have made the first assault—that is, who was the aggressor? The evidence was evenly balanced, and defendant had a right to put in the scale the fact that he bore a good reputation for peace and quietude in the neighborhood in which he lived. This fact would be relevant, as tending to show that such a person was not likely to have brought on the difficulty; that is, to have made the assault in the manner testified to by the prosecutor and his brother. Appellant also assigns as error the action of the court in permitting evidence to prove the general reputation of Ben Strickland for truth and veracity in the neighborhood in which he lived. The court explains the admission of this testimony by stating that the defendant had made an attempt to impeach the State's witness, Ben Strickland, by showing that he had made contradictory and inconsistent statements to his testimony given on the trial of this cause, upon certain material matters, and that on said account testimony of his reputation for truth in the neighborhood in which he lived was admitted. In this action of the court there was no error. See, Burrell v. State, 18 Texas, 731, and 1 Greenl., Ev., Sec. 469. The court did not err in excluding the evidence of witnesses as to the general reputation for truth of Perry Morrison, Charley Morrison, and J. A. Morrison, as there was no testimony, according to the bill of exceptions, showing self-contradictions by said witnesses; the rule in such case being different from that stated above. See, Rushing v. State, 25 Tex. Crim. App., 607. There was no

evidence in this case that either of said witnesses was a stranger in that community, so the case does not come under the rule laid down in Phillips v. State, 19 Tex. Crim. App., 158, and Crook v. State, 27 Tex. Crim. App., 198. Appellant also reserved a bill of exceptions to the charge of the court on self-defense. In our opinion, said charge is subject to criticism. As we understand the record in this case, there was no issue as to excessive force used by appellant, and yet the court appears to charge on excessive force. Besides, we believe that, where a defendant is entitled to a charge on self-defense at all, he should have a clear and distinct charge on that subject, not encumbered or entangled with a lot of provisos and qualifications. If there are contingencies springing out of the evidence that tend to limit the right of self-defense, these qualifications should be given in separate and distinct clauses. Other errors are assigned, but we do not regard them as material, but, for the errors discussed, the judgment of the lower court is reversed, and the cause remanded.

*Reversed and Remanded.*