PERCY BELCHER v. THE STATE.

No. 2694.   Decided November 12, 1913.

Rehearing denied December 10, 1913.

**1.—Murder—Venue—Practice on Appeal.**

Where the question of the failure to prove venue was first raised by appellant in his motion for new trial and no issue was made thereof during trial, and it did not affirmatively appear that venue was not proven by a bill of exceptions as required by law, the same could not be considered; besides, it affirmatively appeared from the record that the killing occurred in the county of the prosecution.

**2.—Same—Rule Stated—Venue—What Proof Required.**

It is the settled law of this State that it is not essential to prove venue beyond a reasonable doubt and that this doctrine does not apply to the issue of venue, and if from the evidence, the jury may reasonably conclude that the offense was committed in the county alleged, it is sufficient.

**3.—Same—Statutes Construed—Presumption.**

Prior to the Act of 1897, now article 938, Code Criminal Procedure, it was necessary that the record on appeal must affirmatively show venue, whether contested or not, but since said Act, this court shall presume that the venue was proven in the court below, unless that was made an issue in the court below and duly reserved by bill of exceptions. Following McGlasson v. State, 38 Texas Crim. Rep., 351.

**4.—Same—Jury and Jury Law—Challenge.**

Where the record on appeal showed that the juror was duly examined on his voir dire and that he was qualified under subdivision 13, article 692, Code Criminal Procedure, there was no error.

**5.—Same—Evidence—Motive—Declarations of Defendant.**

Upon trial of murder, there was no error in admitting in evidence testimony that the State's witnesses, in passing near the defendant and the house of the deceased shortly before the homicide they saw both parties and heard defendant at that time do some pretty loud swearing, and it was not essential that these witnesses must know positively that it was defendant, although one of them did so testify.

**6.—Same—Remarks by Judge.**

Where, upon trial of murder, defendant objected to the remarks of the judge directed to the district attorney that he might ask the witness the questions which the judge asked while the jury was out, with reference to recognizing defendant's voice, and the court qualified the bill that the witness knew defendant by his voice, there was no error.

**7.—Same—Rules of Evidence—Relevancy of Testimony.**

Evidence may be given in any proceeding of any fact in issue, and of any fact relevant to any fact in issue, and every fact which is a part of the same ·transaction as the facts in issue is deemed to be relevant thereto, although it may not be actually in issue, and although if it were not part of the same transaction, it might be excluded as hearsay.

**8.—Same—Relevancy of Evidence—Rule Stated.**

It is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable, and any circumstance of the transaction may be submitted to the jury, provided it affords a fair presumption or inference as to the matter in issue.

**9.—Same—Main Issue—Relevant Testimony—Motive.**

However remote from the main issue in point of time, place or other circumstances a fact may be, if relevant and tending to explain the main issue, the safer practice is to admit evidence thereof, and facts tending to show a motive, though remote, are admissible in evidence.

**10.—Same—Rule Stated—Circumstantial Evidence.**

Where, upon trial of murder, it developed that outside of the defendant's confessions, the evidence was largely circumstantial as to the corpus delicti, a greater latitude in the presentation of the evidence was demanded in order to explore every possible source from which any light, however feeble, might be derived. Following Noftsinger v. State, 7 Texas Crim. App., 301, and other cases.

**11.—Same—Evidence—Flight of Defendant—Independent Facts.**

Where, upon trial of murder, it took the testimony of several witnesses to independent facts known and testified to by them to show defendant's flight and the change of his name and going under an assumed name, there was no error in admitting in evidence testimony with reference to the sending of telegrams, conversations over the telephone, and letters mailed and directed· to defendant under an assumed name, with reference to such flight; besides the bills of exception were defective.

**12.—Same—Evidence—Oral Confession—Proof of Defendant's Declarations—Statements Found to be True.**

Where, upon trial of murder, one of the main contested points was whether or not the dead body found was that of deceased and as to whether he was murdered, and by whom, and by what means the killing was effected, there was no error in admitting in evidence the oral confessions of the defendant voluntarily made while in custody, which were found to be true and which conduced to establish his guilt and the instrument with which he stated the offense was committed, and this was a question of law, and there being no contest that the same were voluntarily made, there was no error in the court's failure to submit a charge upon them to the jury.

**13.—Same—Evidence—Non-Expert Testimony.**

Upon trial of murder, there was no error in permitting State's witnesses to testify that the next day after the homicide, and for a few days thereafter, they went to the former home of deceased and found blood at various places on the ground, etc., there being no attempt to show as to whose blood it was, etc.

**14.—Same—Charge of Court —Weight of Evidence.**

Where the charge of the court, as a whole, left everything necessary to have been found by the jury to them without any intimation as to the weight of the evidence to establish any fact in the case, the same was not on the weight of the evidence.

**15.—Same—Evidence—Confessions—Exculpatory   Statement—Charge   of Court.**

It is only when the State introduces exculpatory statements in a defendant's confession, and practically wholly relies thereon for proving defendant's guilt, that makes it necessary to charge the jury that they must be taken as true unless the State proves the falsity thereof, and where the defendant introduces such testimony, there was no error in the court's failure to charge thereon. Distinguishing Pharr v. State, 7 Texas Crim. App., 472.

**16.—Same—Threats—Charge of Court—Self-Defense.**

Where, upon trial of murder, the only threat, if any, was made at the very time of the killing, there was no error in the court's failure to charge on the law of threats in connection with self-defense, the court's charge on self-defense being in every way favorable to defendant.

**17.—Same—Charge of Court—Character and Disposition of Deceased.**

Where, upon trial of murder, the defendant himself, and he alone, introduced testimony showing that the deceased was a violent and dangerous man, the size, weight, relation and ages of the parties, etc., there was no error in the court's charge submitting the issue of the relative strength of the parties and defendant's knowledge of the character and disposition of deceased.

**18.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained a conviction of murder in the second degree, there was no reversible error on this ground.

Appeal from the District Court of Hardeman. Tried below before the Hon. J. A. Nabers.

Appeal from a conviction of murder in the second degree; penalty, sixty years imprisonment in the penitentiary.

The opinion states the case.

*Fires, Diggs, Decker & Clark* and *J. C. Marshall,* for appellant.—Upon failure to prove venue: Nobles v. State, 50 Texas Crim. Rep., 581, 99 S. W. Rep., 996; Munger v. State, 57 Texas Crim. Rep., 384, 122 S. W. Rep., 874; Winerich v. State, 40 S. W. Rep., 262; Fields v. State, 24 S. W. Rep., 407; Hutto v. State, 33 S. W. Rep., 223; Stewart v. State, 10 S. W. Rep., 908; Hinton v. State, 65 Texas Crim. Rep., 408, 144 S. W. Rep., 617; Tyson v. State, 14 Texas Crim. App., 388; Jack v. State, 3 id., 72; Belcher v. State, 35 Texas Crim. Rep., 168.

On question of remarks by court: Kirk v. State, 35 Texas Crim. Rep., 224; Lawson v. State, 32 S. W. Rep., 895; Simmons v. State, 55 Texas Crim. Rep., 441, 117 S. W. Rep., 141; Walling v. State, 59 Texas Crim. Rep., 279, 128 S. W. Rep., 624; Moore v. State, 33 Texas Crim. Rep., 306.

On question of admitting evidence as to mailing letters, etc.: James v. State, 49 S. W. Rep., 401; Dawson v. State, 40 S. W. Rep., 731; Johnson v. State, 11 S. W. Rep., 106.

On question of admitting telegrams, etc.: Chester v. State, 23 Texas Crim. App., 577; Gaines v. State, 58 Texas Crim. Rep., 631, 127 S. W. Rep., 181.

On question of admitting confessions: Crowder v. State, 28 Texas Crim. App., 51; Musgrave v. State, 28 id., 57; Walker v. State, 2 id.,

326; Raines v. State, 33 Texas Crim. Rep., 294; Baggett v. State, 65 Texas Crim. Rep., 425, 144 S. W. Rep., 1136.

On question of court's failure to submit whether confessions were voluntary: Sparks v. State, 29 S. W. Rep., 264; Hauck v. State, 1 Texas Crim. App., 357.

On question of exculpatory statements: Pharr v. State, 7 Texas Crim. App., 472; Pratt v. State, 50 Texas Crim. Rep., 227, 96 S. W. Rep., 8; Combs v. State, 52 Texas Crim. Rep., 613, 108 S. W. Rep., 649; Pratt v. State, 53 Texas Crim. Rep., 281, 109 S. W. Rep., 138; Gibson · v. State, 53 Texas Crim. Rep., 349, 110 S. W. Rep., 41; Winkler v. State, 58 Texas Crim. Rep., 564, 126 S. W. Rep., 1134; Banks v. State, 56 Texas Crim. Rep., 262, 119 · S. W. Rep., 847; Jones v. State, 13 S. W. Rep., 990.

On question of court's charge on relative strength, etc.: Brady v. State, 65 S. W. Rep., 521; Hickey v. State, 76 S. W. Rep., 920; Wallis v. State, 50 Texas Crim. Rep., 374, 97 S. W. Rep., 471; Beson v. State, 51 Texas Crim. Rep., 367, 103 S. W. Rep., 911; Richards v. State, 53 · Texas Crim. Rep., 400, 110 S. W. Rep., 432; Blocker v. State, 55 Texas Crim. Rep., 30, 114 S. W. Rep., 814.

· *C. E. Lane,* Assistant Attorney-General, for the State.—On question of confessions: Parker v. State, 40 Texas .Crim. Rep., 119.

PRENDERGAST, PRESIDING JUDGE.—Appellant was indicted for the murder of his father, W. R. Belcher, in Hardeman County on or about May 31, 1912. He was convicted of murder in the second degree and his punishment fixed at sixty years confinement in the penitentiary.

On June 7, 1912, the dead body of a man was found in a secluded place in Norton's pasture in said county, which was about thirteen miles distant from said W. R. Belcher's home, where he had lived for some time prior to May 31, 1912, and where he was seen alive on that date. Whether this dead body was that of W. R. Belcher or not was one of the main contested questions in the case, the State contending that it was, while the appellant contended that it was not. Much testimony was introduced by both sides on this issue.

Appellant contends that the judgment must be reversed because the evidence does not show that the killing occurred in Hardeman County. This question was first raised by appellant in his motion for a new trial. The record shows that the issue of venue was not fought out nor contested on the trial of the case. It merely shows that the indictment charged the killing to have been in Hardeman County, and that the appellant plead not guilty to the indictment.

As we correctly said in the recent case of Reynolds v. State, from Shackelford County: "It is the settled law of this State that it is not essential to prove venue beyond a reasonable doubt; that the doctrine of reasonable doubt does not apply to the issue of venue. (Barrara v. State, 42 Texas, 260; McReynolds v. State, 4 Texas Crim. App.,

327; Deggs v. State, 7 Texas Crim. App., 359; Atcherberg v. State, 8 Texas Crim. App., 463; McGill v. State, 25 Texas Crim. App., 499; Cox v. State, 28 Texas Crim. App., 92; Abrigo v. State, 29 Texas Crim. App., 143.) It is unnecessary to cite any later decisions. Venue may be proved by other than positive testimony; if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged it is sufficient. (Hoffman v. State, 12 Texas Crim. App., 406; Bowman v. State, 38 Texas Crim. Rep., 14.) It may be effectively proved by circumstantial as well as by direct evidence. (McGill v. State, supra; Cox v. State, supra; McGlasson v. State, 38 Texas Crim. Rep., 351; Kugadt v. State, 38 Texas Crim. Rep., 681; Nance v. State, 17 Texas Crim. App., 385.)"

Prior to the Act of 1897, p. 11, now article 938, Code of Criminal Procedure, this court had uniformly held that the record on appeal must affirmatively show venue, whether contested in the lower court or not. In making out statement of facts theretofore, when venue was not an issue, frequently the testimony on that subject was inadvertently or otherwise omitted and the statements of facts were prepared more particularly with reference to the contested issues fought out in the trial court. The Legislature, therefore, for the express purpose, among others, of preventing reversals, because the record on appeal did not affirmatively show the venue, passed said Act of 1897 whereby it is provided that in all cases this court *shall presume* that the venue was proven in the court below; unless, that was made an issue in the court below and it affirmatively appears that venue was not proven, by a bill of exceptions properly signed and allowed by the judge of the court below, or proven up by bystanders and incorporated in the transcript as required by law. Very soon after the enactment of this law the question came up in McGlasson v. State, 38 Texas Crim. Rep., 351. In that case the question was attempted to be raised by a special charge requested by defendant, to find him not guilty on the ground that no venue had been proved. The court refused that charge and he took a bill of exceptions thereto. On this point the court, in that case, said: "The question presented as to this bill of exceptions is, does it sufficiently comply with the amendment to article 904 adopted by the Twenty-fifth Legislature? See laws 25th Leg., p. 11. The Act in effect provides that, as to the venue in all cases, the court shall presume that it was proved in the court below, unless it was made an issue there and it affirmatively appears to the contrary by a bill of exceptions, properly signed and allowed by the judge, or proved up by bystanders, as is now provided by law, and incorporated in the transcript, as required by law. It occurs to us that this statute requires this court to indulge the presumption that the venue was proved in the court below, unless the bill of exceptions shows affirmatively that it was not proved. This would seem to apprehend that, before we can treat the venue as not proved, the court must either certify that the evidence did not establish the venue, or that said bill of exceptions should contain all the testimony

in the case tending to show venue, and certify that same was all the testimony bearing upon that issue; and from this statement of the testimony it affirmatively appears that the venue in the case was not proved. If this be a true construction of said article, then the bill in question does not comply with the requirements of the law." Again, in Scott v. State, 42 Texas Crim. Rep., 607, the appellant in that case, sought to raise the question by his motion for new trial and by affidavits appended thereto, showing that venue was not proved in the court below. This court in that case said: "Appellant, in his motion for new trial, and by affidavits appended thereto, raises the question of venue, that is, he adopts this mode of insisting that the venue was not proved in the court below. Under article 904, as amended by the Twenty-fifth Legislature (see Acts, 1897, page 11), it is provided that the failure to prove venue in the trial court can only be raised by a bill of exceptions properly signed and allowed by the judge or proved up by bystanders, as is now provided by law, and incorporated in the transcript as required by law. This mode of procedure was not pursued by appellant and consequently we can not consider the matter as presented in the motion for new trial." See also Barker v. State, 47 S. W. Rep., 980; Washington v. State, 77 S. W. Rep., 810; Brantly v. State, 42 Texas Crim. Rep., 293; Munger v. State, 57 Texas Crim. Rep., 384; Wynne v. State, 41 Texas Crim. Rep., 504. It is needless to cite the other cases. In approving appellant's bill of exceptions to the court overruling his motion for new trial on that ground, the court qualified and explained it by stating: "That no question was raised as to the venue until a motion for a new trial. The venue is shown circumstantially in numerous ways throughout the record and more particularly in this that the killing occurred at the Belcher farm and the body was found at a point in the Norton pasture about thirteen miles from there and about one-half mile south of Red River and in Hardeman County; G. W. Patton testifies (statement of facts, page 41; Sten. notes, page 33) that he now lives in Johnson County, 'lived in this county last year; about one-half mile south of where W. R. Belcher lived.' W. M. Middleton testified that he moved to this county to the Belcher farm, etc.—V. P. Foster that Belcher farm three-quarters mile north of Goodlet.".

The Legislature by said Act, and the proper construction thereof by this court, as shown above, intended that this court should only consider the question of venue on appeal when presented by the proper bill as required thereby. The wisdom of it is well illustrated in this case. Here we have a statement of facts of 150 typewritten pages and if not shown by a bill as required, we would be under the necessity of searching out from one end to the other of this 150 pages to ascertain whether or not the evidence was sufficient to show that venue was proved. However, in addition to the court's qualification above quoted, we have found in this statement of facts ample evidence from which the jury

were authorized to find that if the body found was that of W. R. Belcher, he was killed in Hardeman County.

There was no error in the court overruling appellant's challenge of L. J. Tankersley, who was one of the veniremen, because he showed, as claimed by appellant, that he was disqualified to serve. His examination and testimony on his voir dire showed clearly that he was not disqualified but qualified in full accordance with subdivision 13 of article 692 under which the challenge was made. This question has been so often decided against appellant that we deem it unnecessary to collate the authorities, but see those cited under this subdivision of the article in the 1911 Revised Code of Criminal Procedure and also under the same subdivision in White's Ann. Code of Criminal Procedure.

Appellant has preserved a large number of bills of exceptions and raises a large number of questions. We have carefully considered all of them. They can best be understood, discussed and decided by grouping those that pertain to the same matters.

Among other witnesses introduced by the State were B. R. Foster, and D. Mullins. The substance of their testimony was that on May 31, 1912, they lived at the town of Goodlet which was about three-quarters of a mile distant from where said W. R. Belcher's home was and where he lived at that time; that about 8:30 on the morning of May 31st, they, together, passed said Belcher's house about fifty yards therefrom; that they then saw W. R. Belcher, and Foster said he saw and heard appellant at that time do some pretty loud swearing; Mullin heard the same but couldn't identify appellant as the party who used the language; that appellant at the time was standing just in the door five or six feet from his father, W. R. Belcher, who was passing from one door to the other at the time and that they heard him say: "I guess by God, you are about the last God-damn man that had it." Mullins could not be so certain whether it was appellant who was talking or not as he did not know him so well and was not familiar with his voice, but this was at the same time and the same loud cursing and talking that Foster heard and testified about. Foster was more familiar with appellant's voice, and in his judgment it was appellant who was doing the loud cursing and talking, and who said what is stated above. This testimony was admissible. It was not essential to its admissibility that these witnesses must know positively that it was appellant who was doing the talking and cursing, but Foster does show by his testimony a sufficient knowledge of appellant's voice, the situation of the parties and all so that it was admissible. The fact, if it be so, that they could not be certain about the matter would go to the weight of the evidence and not to its admissibility. It seems that a part of Foster's testimony was first heard by the court in the absence of the jury so that the court could determine whether the testimony was admissible over appellant's objections; that when the jury was brought back and the witness was testifying before them and appellant was making objections thereto, which were

overruled, the court stated to the district attorney that in order to connect it up "you might ask him the questions I did while the jury was out." Thereupon, the district attorney stated to the court that he was not through with the witness and intended to ask said questions. The appellant objected to the suggestions of the court to the district attorney, claiming that his remark was upon the weight of the evidence. The court, in allowing the bills, among other things, qualified it by stating that the testimony showed that the witness knew defendant by his voice. No error is shown in this matter.

Our statute, article 1, Code of Criminal Procedure, says that the object of the Code seeks: "4. To bring to the investigation of each offense on the trial all the evidence tending to produce conviction or acquittal." Judge White, in his Ann. Code of Criminal Procedure, secs. 1070 et seq., among other things, says:

"Evidence may be given in any proceeding of any fact in issue, and of any fact relevant to any fact in issue. Every fact which is part of the same transaction as the facts in issue is deemed to be relevant to the facts in issue, although it may not be actually in issue, and although if it were not part of the same transaction, it might be excluded as hearsay. Whether any particular fact is or is not part of the same transaction as the fact in issue is a question of law upon which no principle has been stated by authority, and on which single judges have given different decisions. Again, facts necessary to be known to explain or introduce a fact in issue, or relevant or deemed to be relevant to the issue, or which support or rebut an inference suggested by any such fact, or which show the relation of the parties by whom any such fact was transacted, or which afforded an opportunity for its occurrence or transaction, or which are necessary to be known in order to show the relevancy of other facts, are deemed to be relevant in so far as they are necessary for these purposes, respectively. Morrison v. State, 37 Texas Crim. Rep., 601. Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable. Whatever is a condition, either of the existence or of the non-existence of a relevant hypothesis, may be shown. But no circumstance is relevant which does not make more or less probable the proposition at issue. McGuire v. State, 10 Texas Crim. App., 125. No testimony should be offered by the prosecution which is not legal and relevant. Gazley v. State, 17 Texas Crim. App., 267; Nalley v. State, 28 Texas Crim. App., 387. But evidence, though not bearing directly on the issue, nor sufficient per se to support a conviction, is admissible if it *tends* to prove the issue or constitutes a link in proof of it. Marshall v. State, 5 Texas Crim. App., 273; Francis v. State, 7 Texas Crim. App., 501. All the circumstances of a transaction may be submitted to the jury provided they afford any fair presumption or inference as to the matter in issue.

McMahon v. State, 16 Texas Crim. App., 357; Grimmett v. State, 22 Texas Crim. App., 36."

Again, in section 1072, he says: "However remote from the main issue in point of time, place or other circumstances a fact may be, if relevant and tending to explain the main issue, the safer practice is to admit evidence thereof, leaving the question of the weight to the jury. Russell v. State, 11 Texas Crim. App., 288. Facts tending to show a motive, though remote, are admissible in evidence. Dill v. State, 1 Texas Crim. App., 278; Jones v. State, 4 Texas Crim. App., 436; Rucker v. State, 7 Texas Crim. App., 549." These principles are applicable to some of the questions raised in this case.

The State showed by a large number of witnesses, and, in fact, it seems not to have been controverted that no one in that whole community and county ever saw W. R. Belcher after May 31, 1912; that either on that day or the next the Belcher family, including appellant, left the said Belcher home and did not return thereto; that the appellant, either that day or the next, was seen to drive a wagon from this Belcher home with some of the small children therein and something lying in the wagon resembling a roll of bedding; that all the bed clothes were taken off of the bed in the home, and the situation of the house, of the furniture and surroundings of the house showed that it had been hastily abandoned by the Belchers; that on June 7, 1912, some thirteen miles from this home, the body of a dead man was found in a secluded place lying on a part of a wagon sheet and a common cheap blanket, covered up with two quilts; that the tracks of a wagon were at that time shown to have passed right over where this body was found and the evidence was clearly sufficient to show that this dead body was the body of said W. R. Belcher; that a day or two later, appellant left Hardeman County and went to Oklahoma City, where he was arrested and brought back a few days after this body was discovered.

Outside of the confession or statement of the appellant hereinafter mentioned, and even therewith, the State was under the necessity, by circumstantial evidence very largely, of establishing the identity of this dead body as that of W. R. Belcher, and that the appellant had murdered him. In such cases as this, courts and text-writers all say: "The mind seeks to explore every possible source from which any light, however feeble, may be derived." Noftsinger v. State, 7 Texas Crim. App., 321; Cooper v. State, 19 Texas, 449; Barnes v. State, 41 Texas, 342; Hamby v. State, 36 Texas, 523; Black v. State, 1 Texas Crim. App., 368. "And in such cases the nature of the case in many instances demands a greater latitude in the presentation of the evidence of the circumstances than where a conviction is sought upon direct and positive testimony." Noftsinger v. State, supra.

The State claimed the flight of appellant and his attempt to disguise his whereabouts and prevent detection by changing his name. Without objection the State proved that on May 31, 1912, or the next day that Mrs. Belcher with her children other than appellant took up her residence

in the said town of Goodlet and did not thereafter live at said farm home, where W. R. Belcher and his family had lived up to that time, and that she, Mrs. Belcher, rented out that farm on June 5, 1912, to Mr. Middleton.   It was also, without question, shown, as stated above, that appellant in a day or two after May 31 left Hardeman County, buying a ticket for the train on which he took passage to some nearby town in Oklahoma; that when he reached that town he did not get off but paid his fare to the conductor from there to Oklahoma City, where he was found a few days after the said dead body was found, going under an assumed name and at first denied that he was the appellant, Percy Belcher.

It took the testimony of several witnesses to independent facts known and testified to by them, respectively, to show or seek to show, as the State did, appellant's flight and the change of his name and going under an assumed name.   On this point, over appellant's objections, the State proved by Mr. Vernon, the agent and manager of the Western Union Telegraph Company at Quanah, Texas, in May and June, 1912, and by Horton Murphy, the messenger boy of said telegraph company at Quanah, that a day or two after appellant reached Oklahoma City, Mrs. Belcher received a telegram at Quanah, signed G. W. Pendergraf, which said, please send me 16.45 to finish paying fine at once; that on June 5, just after the receipt of this telegram Mrs. Belcher went to the telegraph office and had said operator to remit for her to said Pendergraf $20 by telegraph.   Miss Williams, who was the long distance telephone operator at Quanah in June, 1912, testified that there were two long distance calls from a party in Oklahoma City, which the data in her office showed were from Pendergraf and that Mrs. Belcher did have a long distance telephone conversation from Quanah with some party at that time in Oklahoma City; that Mrs. Belcher did not come to the telephone office to do the talking, but talked from the phone at Mrs. Goodner's residence.   Mrs. Goodner testified that Mrs. Belcher at this time did have a long distance conversation with some one from her residence in which she told the party that she was Mrs. Belcher and she called the party to whom she was talking detective; that she had two such long distance conversations over her phone from her residence. In one of them she heard Mrs. Belcher say that the body was brought in and that they seemed to think it was Mr. Belcher's body and that she heard her also tell this party to go to the office and inquire for G. W. Belcher's mail and another party's mail, and that Mrs. Belcher left with her at the time the charges of the telephone company for said two conversations.   Roy Stovall testified that he was toll lineman for the said telephone company at Quanah in June, 1912, and that on June 8, 1912, he heard a conversation on the telephone line between Oklahoma City and Mrs. Goodner's house in Quanah; that he did not know the voice of either party talking but that one was a man's and the other was a woman's and that he heard the woman's voice call the name of Clark in that conversation, and that it was about a letter; that

·the male voice said that he did not receive the letter and that the woman's voice said go to the postoffice and call for a letter under the name of Clark; that he could not remember the initials, nor could he tell, being on the line, which voice was in Oklahoma City and which was at Quanah. Mr. Middleton testified that shortly after he had rented said Belcher's farm from Mrs. Belcher on June 5th, in moving back and forth, and while he could not be certain, he thought it was before the said dead body was found on June 7th, that he for Mrs. Belcher, appellant's mother, mailed a letter on the train for her which train was going towards Eldorado in Oklahoma. He could not remember, as it was not impressed upon him, the name or the address of the person to whom the letter was addressed. Mr. Morris, who was a city detective at Oklahoma City in May and June, 1912, testified that he went to the postoffice and watched for a party to come there to call for a letter addressed to W. M. Clark; that about 1:05 p. m. the appellant called at the postoffice in Oklahoma City for this letter and that he at once arrested him; that at the time the postoffice clerk became excited and did not deliver the letter to appellant; that he arrested appellant, and asked if his name was not Percy Belcher, which he first denied. Upon being told by Morris that he knew him he then admitted his identity and name; that Morris then got said letter addressed to said Clark and turned it over to appellant and that he saw appellant take a $20 bill out of it. Appellant did not object to the said testimony of Morris, but did object, on various grounds, to the testimony of each of the above named witnesses when they, respectively, gave their testimony in substance as given above. We have carefully considered appellant's respective objections to this testimony with the explanation and qualification made by the court in approving the respective bills. The respective bills themselves, if taken alone, are each too meager and do not comply with the well established rules so as to require consideration thereof by this court. But we have gone over them all, as stated, and, in our opinion, the testimony of the respective witnesses was admissible in this case and none of appellant's objections thereto should have been sustained, and none of them present any reversible error in this case.

As stated above, one of the main contested points in this case was whether or not said dead body was that of W. R. Belcher. Another was whether or not, even if it was his body, he was murdered and by whom? The State contended that it was his body; that he was murdered and that appellant had committed the offense. The appellant contended the reverse of this. Another contested point was, even if this body was that of W. R. Belcher and that his death was brought about by unlawful violence, by what means was his killing effected?

When this body was first found, as stated above, decomposition had taken place to a considerable extent. Holes made by worms in the body or some external objects were shown in various locations on the body. Many persons viewed the body from the time it was found until it was interred the next day, on June 8th. No one knew from such

examination or otherwise, whether this body was that of W. R. Belcher, or whether he came to his death by violence at the hands of another, or if so, what means were used to effect it. Various opinions and guesses were indulged. Some thought it was his body, others thought not. Some thought that he had been killed with an axe, others that he had been shot, but with what kind of gun was unknown and guessed at variously by said persons. Some thought he was shot with a shotgun in the breast; some in the throat, others that he was shot in the back of the neck or head; some with some kind of gun, others with another. No one knew and no one could definitely tell.

Appellant had been arrested about June 10th in Oklahoma City and within the next day or two turned over by the authorities of Oklahoma to the sheriff of Hardeman County and by him brought back to Hardeman County and placed in the jail there on or about June 14th. While thus confined in said jail on this charge, the court permitted the State to introduce the testimony of the sheriff, B. Frank Walker, to an oral confession or statement by appellant to him, which was made on the Sunday following his return from Oklahoma City, and after the said body had been interred, to this effect: That he, appellant, had shot his father, W. R. Belcher, with a shotgun a little to the back of the right of the head with small shot; he said with either No. 6 or No. 7½ shot; that his father had had one of his teeth pulled out and that the tooth next to that one had a decayed place in the center of it.

The State then introduced evidence showing that the next day after this confession or statement by appellant it had this dead body disinterred and an accurate examination thereof made, which showed that the dead body had been shot, at the place, and with small shot, as stated by appellant, and that there was one of the teeth missing and that the one next to it had a hole in the center. In the previous examination of this body no one had ascertained, and no one knew that this body had been shot at the exact location stated by appellant, though some thought perhaps this had been done. No one knew and no one could testify that prior to this confession and the examination of the body, after it was disinterred, that he had been shot at this location with small shot. This examination developed with certainty that this was the location and that he was shot with small shot and then for the first time were small shot seen and extracted from the body of the deceased where shot. It was known before that this body had a missing tooth, but while this was true, it was not known prior to then that the tooth next to the missing tooth had a hole in the center of it. Still again, while it was known before that this body had a missing tooth perhaps at the same location that W. R. Belcher had had a missing tooth, yet, whether or not that was his body was not known with certainty by any one.

There can be no question that from the testimony in this case, all of it, whether this was the body of W. R. Belcher before this confession

and subsequent verification, was unknown; that he had been shot in the location fixed with small shot was not known; that the tooth next to the missing tooth had a hole in the center of it was not known.   The confession or statement of the appellant was without doubt, the means and the· cause of thé discovery of these respective facts with certainty.

Our statute, article 810, Code of Criminal Procedure, expressly provides in substance, and it has been uniformly so construed by many decisions of this court, that the oral confession or statement of an accused while in custody, when voluntarily made by him, when in connection therewith he makes statements of facts or circumstances that are found to be true and which conduce to establishing his guilt, or the instrument with which he states the offense was committed, are admissible.   It is also the settled law of this State that whether or not such statement or confession is admissible is a question of law to be decided by the judge and not left to the jury.   However, if it should be contested that the confession was not voluntarily made, or the making of such confession should be denied by the appellant, the court should submit such issue to the jury; but if these matters are not in issue, then the court should not submit them to the jury.   In this case the confession was shown to have been voluntarily made by appellant after being duly warned and he did not dispute that he had made said confession. Therefore, as said by this court in Jordan v. State, 51 Texas Crim. Rep., 145, and many other cases:   "A confession is criminative evidence like the facts that other witnesses in this case testified about, and it is not proper for the court to single out the confession under the facts in this case for any purpose."   For other cases along this line see sec. 236, Branch's Criminal Law, and cases there cited.   For a collation of some of the cases under the said statute above cited to the effect that the oral confession of an accused in custody which results in statements of facts and circumstances that are found to be true which conduce to establish his guilt, and the instrument with which he states the offense was committed has been found, are admissible, see secs. 1034 et seq. of White's Ann. Code of Criminal Procedure.

So that we think in this case the appellant's confession was clearly admissible and the court should not have charged thereon in any particular as contended by appellant.

The court correctly permitted several witnesses to testify that the next day and for a few days thereafter they went to the former home of said W. R. Belcher and found blood at various places on the ground, the side of the house and the floor thereof as testified to by them.   They did not have to be doctors nor experts to determine whether or not what they saw was blood.   None of them attempted to state whose blood it was, or in any way analyze it.

The court's charge as a whole and neither paragraph thereof, is on the weight of the evidence as complained by appellant.   The charge, in every instance, leaves everything necessary to have been found by the jury to them without any intimation by the court as to the weight

of the evidence to establish any fact in the case. We can not understand how the judge could have more fairly submitted all these questions to the jury, without any intimation of his opinion, if he had one, for or against the appellant.

· The State did not.prove or offer to prove the confession or statement of the appellant otherwise than as, in substance, has been shown above. The appellant, in cross-examination of the State's witness, said Sheriff Walker, when the State introduced his testimony showing said confession by appellant, did not show or attempt to show any other confession containing exculpatory statements or otherwise by him at that time. Subsequently, after the State had rested, and the appellant had introduced considerable other testimony, he introduced said Walker, the sheriff, and himself proved another confession or parts of said confession which would be termed exculpatory and in his favor. It is only when the State introduces such exculpatory statements in the confession, and relies upon such confession, practically wholly, for the purpose of proving an appellant's guilt that makes it necessary or proper for the court, under any contingency, to charge in effect that such exculpatory statement is to be taken as true, unless the State proves the falsity thereof. So that appellant's contention that the court committed reversible error in not so charging in this case, and citing Pharr v. State, 7 Texas Crim. App., 472, and other authorities along that line, even if they were applicable and laid down the law as contended by appellant, could not be maintained in this cause and the court did not err in not charging on the subject as contended for by him.

Appellant contends that the court should have submitted a charge in his favor on the question of a threat. There is no evidence in this case of any threat by W. R. Belcher against appellant at any time. The only thing that could be contended was a threat is that appellant in introducing his confession that he killed his father; that his father right then said, "I will fix you right now," and grabbed for an axe, and that he immediately killed him. Even if that could be construed to be a threat it was at the very time of the killing and it was not necessary to charge the law of threats at all because thereof. Hancock v. State, 47 Texas Crim. Rep., 3; Armstrong v. State, 50 Texas Crim. Rep., 26; Dobbs v. State, 54 Texas Crim. Rep., 550; Davis v. State, 52 Texas Crim. Rep., 149.

Appellant has some criticisms of the court's charge on the subject of self-defense. The only question in the whole record that suggests any self-defense is that part of appellant's confession introduced by him to the effect that his father told him immediately before or at the time of the killing that he and his mother had separated and that he himself was going to take some of the younger children; that thereupon he, appellant, by his motions and what he said to his father stated that he would forbid and not permit his father to take the children; that thereupon his father said "I will fix you right now" and started to pick up an axe. The distance between appellant and his father at this

time was shown by the sheriff to have been fifteen feet. Appellant claims that immdiately when he started to pick up this axe, with his said declaration, that he, thereupon shot and killed him, claiming he did so . in self-defense. As stated it was demonstrated that this shot took effect in the back of the neck and lower part of W. R. Belcher's head behind the right ear. The court submitted, we think, self-defense in appellant's favor in every way favorable to him that was raised or suggested by this testimony and that there is no error in the court's charge on the subject.

The appellant himself and he alone introduced testimony showing that his father was a violent and dangerous man and had had fights with various persons and had killed one man; in addition, that his general reputation was that of a dangerous and violent man; in addition, he expressly proved that he, appellant, was a young man 19 or 20 years of age and weighed about 145 or 150 pounds; that his father was a man 45 or 46 years of age, about six feet tall, and weighed from 170 to 185 pounds and a very active man. Under these circumstances, the court did not err in submitting appellant's claimed self-defense by, among other things, using the expression: "Or if by the acts, words or conduct, or threats then made, if they were, of W. R. Belcher, at the time it reasonably appeared to the defendant that said W. R. Belcher was about to attack him, and from the manner of such attack or threatened or apparent attack, and defendant's knowledge of the character and disposition of said W. R. Belcher, and relative strength of the parties, caused him to have a reasonable fear or expectation of death or serious bodily injury," etc. The part of this charge complained of is the words "and defendant's knowledge of the character and disposition of said W. R. Belcher, and relative strength of the parties." This was very appropriate and in no way the subject of adverse criticism by appellant, under the facts and circumstances of this case.

In concluding his printed brief in this case, which is a vigorous and forcible one, appellant by his able attorneys, among other things, says: "The evidence shows that W. R. Belcher was a most violent and dangerous man, having killed a man himself, when the defendant was a baby. Human experience teaches us that when the mother is assailed, a true and loving son flies to her rescue. Again we say if the confession was made then it was true, being unimpeached, that a vicious father was attempting to take from that mother by force, her children, and that in the effort on part of the defendant to prevent this distress being brought upon the mother the unfortunate difficulty arose." Evidently this contention was made by the appellant before the jury and this evidence was introduced by him for the purpose of showing the violent and dangerous character of his father, which was unquestionably known to him, if it was true, and their relative size, age and strength was proved by him; it was appropriate for the court to charge, as he did, on this issue and it was entirely applicable to the question as made by the appellant himself.

Notwithstanding this record is a voluminous one, containing hundreds of pages of typewritten matter, we have carefully read and considered the whole of it, and, in our opinion, appellant presents no question that would authorize or require this court to reverse this case, and it will, therefore, be affirmed.

*Affirmed.*

[Rehearing denied December 10, 1913.—Reporter.]