### GILBERT WILLIAM COX v. THE STATE.

No. 21066. Delivered May 8, 1940.
On Rehearing October 23, 1940.
Rehearing Denied December 18, 1940.

The opinion states the case.

*Robert Emmett White* and *H. L. McCune, Jr.,* both of El El Paso, for appellant.

*Roy D. Jackson,* District Attorney, and *Harold S. Long,* Assistant District Attorney, both of El Paso, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is robbery. The punishment is confinement in the state penitentiary for ten years.

Appellant was indicted by the grand jury of El Paso County, Texas, for the offense of robbery. Upon the trial he took the position that if any offense was committed, it was committed in the State of New Mexico and not in the State of Texas. There is no question as to where the boundary line between the states .was established in 1929, and the line is well marked by monuments duly established by the Federal Government. According to that line the offense was committed approximately 290 feet from the boundary line in the State of New Mexico. There is no dispute as to where the automobile stopped in which the parties connected with the offense were riding, including the injured party. That point is definitely located, and from that point north or a little northeast sixty-five yards is the point where the injured party was knocked down and robbed; and that point is something like 290 feet in the State of New Mexico from the boundary line between the states. A person standing at the point where the car stopped and drawing a straight line from Monument 95 to Monument 96 and thence to the canal or drain along the same course, would leave the impression that the offense was committed in the State of Texas, but the boundary line at Monument 96 turns almost at right angle in an easterly direction and therefore is not in a straight line from Monument 95 by way of Monument 96 to the Montoya Drain, but runs northeast of the drain 485 feet or approximately so. Consequently, according to the official map in the record, the offense was not committed in the State of Texas but in the State of New Mexico. Therefore the District Court of El Paso County was without jurisdiction to try appellant for the offense charged. Consequently, we are constrained to reverse the judgment and remand the case, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING

GRAVES, Judge.

The State has filed a vigorous motion for a rehearing herein, in which it is contended that we were in error when we held as a matter of proof that this offense was committed, if at all, within the State of New Mexico and not in the State of Texas.

Venue need not be proven beyond a reasonable doubt. See Branch's Penal Code, Sec. 450; also proof of venue may be made by inference. We quote Sec. 451, p. 235, Branch's Penal Code:

"It is not required that venue should be established by direct testimony nor that it should be proved beyond a reasonable doubt. Venue may be proved by circumstantial evidence, as any other fact, and if the evidence be reasonably sufficient to satisfy the jury that the offense was committed in the county alleged, their finding on that issue will not be disturbed on appeal. Deggs v. State, 7 Texas Crim. App. 359; Hoffman v. State, 12 Texas Crim. App. 406; McGill v. State, 25 Texas Crim. App. 512, 8 S. W. 661; Bowman v. State, 38 Texas Crim. Rep. 14, 41 S. W. 635; Murphree v. State, 55 Texas Crim. Rep. 318, 115 S. W. 1189; Pye v. State, 154 S. W. 222; Reynolds v. State, 160 S. W. 362; Belcher v. State, 161 S. W. 459; Himmelfarb v. State, 174 S. W. 586."

"It is not error to charge the jury that it is not incumbent on the State to prove the venue beyond a reasonable doubt. Lyon v. State, 34 S. W. 947; Reynolds v. State, 160 S. W. 362."

In the early case of Hoffman v. State, 12 Texas Crim. App. 406, we held: "It is not essential that venue be established by positive testimony. If from the facts in evidence the jury may reasonably conclude that the offense was committed in the county alleged, it is sufficient. The doctrine of reasonable doubt does not apply to the merely jurisdictional fact of venue. (Deggs v. State, 7 Texas Ct. App. 359; Achterberg v. State, 8 Texas Ct. App. 463.)"

The offense was alleged to have been committed in El Paso County on or about July 27, 1939, the indictment was filed on September 18, 1939, and the trial was had on November 7, 1939. The complaining witness was taken in an automobile by appellant and several others from the city of El Paso in a westerly direction, and when some five or six miles away from such city he was knocked in the head and became unconscious, and was robbed of a sum of money. It appears from the facts that upon regaining consciousness he obtained aid at a nearby house, and eventually reported the matter to the peace officers, one of whom, Joe Neely,—a graduate of the F. B. I. school for police officers,—went out that same night to the scene of the difficulty and made an investigation on the ground, and testified in part as follows:

"Yes, he told me what had happened to him at that time.

I made an investigation out at the scene of the alleged robbery, just a preliminary examination that night, yes sir. Yes, I went back the next morning, twice next morning, I went just as soon as it got light enough to see. Yes, I was able to find evidences out there. And then later I went back with this witness Carnes some time about noon or shortly after noon the next day. Yes, following down the Gibson Drive from Highway 80 I know where Carnera's house is. Yes, I know approximately where the Texas-New Mexico boundary is. It is marked every so often by monuments set by the United States Government, every so often, I haven't any idea about whether these lines are straight or not, I presume they are.

"I found where the automobile had left the Highway and gone out into this field road; no, this road doesn't lead anywhere, it is a dead end road, leads out into this field. Yes, I followed up the tracks of the car up by the side of that drainage ditch, canal and along into the cotton field. Yes, I found several tracks at the point where it stopped. Yes, I found tracks of persons as if persons were running over in the cotton field, there were four tracks leading off into the field.

"Yes, down in the field I found evidence of a person being down on the ground, and blood, there was blood there, yes. I never did search very closely to see where these tracks lead, I just found where the tracks came back into the Gibson Drive, about the intersection of the Gibson Drive and the Montoya canal there were evidences where these tracks had come back and gotten in the car there.

"The point where the car had stopped was in New Mexico.

"The point where I found that this man had been down and bleeding to my knowledge is in Texas.

"I sighted with monuments there to determine that. * * *

"Yes, when I said that the point where this man had been down and bleeding was on the Texas side I meant that it was in the County of El Paso and State of Texas. * * *

"Yes, I testified that the spot where Kay Carnes fell was in Texas; if it was in Texas it is also in El Paso County. It was in Texas, that was my impression, yes sir. At the time I made the preliminary survey there I went over to two monuments and then sighted between them and that is as near as I could get. As far as any instruments I didn't use any instruments whatsoever on it; I am not a surveyor, even if I am an expert. * * *

"I think it a couple or three days ago when I was asked about pointing out the place to Mr. Caldwell where this complaining witness had been knocked down and I found the blood, I think it was last Saturday. Yes, that was out in the middle of the cotton field. It had not been plowed and worked. O, yes, it has been worked by way of cultivation several times and irrigated. The only fixing of the place I could possibly have would be the approximate distances.

"O, yes, the monuments that the County Surveyor based his sighting on were the government boundary monuments, I am sure of that. Yes, they were in the same place and in the same way on July 27th. Yes, I at that time viewed the spot where I found this blood these same monuments in my opinion determined it was in El Paso County, Texas.

"I paced it off the first time I went out there and found the blood on the ground, I paced it, it was approximately 65 paces.

"I testified that the occurrence of this affair was in El Paso County, that particular part of it. Why there has always been a reasonable doubt about that New Mexico line up there, it is as crooked as three dogs' hind legs. I haven't any idea about what the Supreme Court did about establishing that line. In my opinion I believe from an investigation that this crime or alleged crime took place in El Paso County, State of Texas, partly. It couldn't have all taken place there. I believe that the investigation shows that he was struck once right near the car or maybe right by the side of the car even before he ever attempted to run because there was some blood or splotches even down to the point where the pool of blood was on the ground.

"Yes, I am still contending that it was in Texas; no sir, the whole thing was not in Texas. No sir, not from the beginning to the end I don't say it was in Texas. Yes, the beginning or the ride, that was in Texas, in El Paso. Yes, the car crossed the line.

"In my opinion the man was knocked down in Texas. No sir, my opinion is not based on the 65 paces that I took. My opinion is based on a preliminary examination the day after this thing when I went up there; the cotton was very small and I could sight from one of these monuments to the other; these monuments could be seen at that time. I just went and sighted from one monument to the other; I didn't have a surveyor's instrument, I just looked from one to the other and established in my mind that it was a straight line.

"I think the numbers of these monuments are 97 and 96."

It is observed, however, that the county surveyor, Mr. Caldwell, together with appellant's attorney, and in company with Mr. Neely, on or about November 5, 1939, went out to the scene of the alleged robbery and the surveyor unqualifiedly testified that if the occurrence took place where Mr. Neely said the evidences showed such on July 28, 1939, then such occurrence was bound to have taken place in New Mexico.

Again we note that the trial court in a portion of his charge to the jury gave a liberal charge relative to venue, and instructed the jury that unless they believed beyond a reasonable doubt that such offense occurred in El Paso County, they should acquit the appellant.

It also appears that the jury in their deliberations balloted on the fact of venue, and finally determined such to be in El Paso County, Texas, thus accepting the statement of Mr. Neely as to what his impression and belief was on the morning after the commission of the alleged offense. This was their calm and deliberative verdict, and unless there is no credible testimony to support the same, we feel it our duty under the law not to set that finding aside, although there may be evidence in contradiction thereof. It was the jury's duty and province to decide this matter, presented to them as it might have been on conflicting testimony, and we do not think their function should be usurped by this Court. The signs of the struggle were gone on November 5th, and the blood in the cotton field had surely disappeared at that time; and it was just as reasonable for the jury to say that Mr. Neely was mistaken when he attempted to point out the location of this spot of blood more than three months after he had seen the same as it was to say that he was mistaken when he sighted between the two boundary markers while the blood was fresh on the ground.

We think we were in error and usurped the function of the jury when we reversed this cause and held that the undisputed testimony showed that this offense took place in the State of New Mexico. This holding disposes of appellant's bill No. 1.

Appellant's second bill of exceptions complains of practically the same question as submitted in bill No. 1. We again can only say that this matter was submitted to the jury on contradictory testimony, and after balloting thereon, they found their verdict as based on the State's version of the locality of this alleged offense. To the same effect is bill No. 3, and we observe the same ruling thereon.

Bill of exception No. 4 relates to an alleged misconduct of the jury wherein it was alleged that the remark had been made, in substance, during their deliberations, that the man on trial was guilty of the alleged offense regardless of where the crime was committed, and that the venue thereof was immaterial. Eleven of the jurors were questioned on the hearing of the motion for a new trial, and the trial court seemed to have been of the opinion, to which we agree, that no such remark was made by any member of the jury in their deliberations, and we see no error shown in such matter. This bill is overruled.

The remaining bills of exception seem to be based on an effort to obtain a new trial, and arose on the hearing of a motion for a new trial, in order to offer testimony of an impeaching nature relative to that given by a witness in the trial of this case.

Usually newly discovered evidence which only tends towards an impeachment of a witness is not sufficient grounds for the granting of a motion for a new trial. See Branch's Penal Code, p. 129, Sec. 202.

The State's motion for a rehearing is granted, the judgment of reversal is set aside, and the judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

This case was reversed on original submission and the State's motion for rehearing was granted. It is, therefore, not necessary to pass on appellant's application for permission to file motion for rehearing. He has that right under the rules.

This case has occasioned unusual consideration by all members of the court, particularly on the evidence bearing on the question of jurisdiction. We concluded that the evidence as presented left the matter for the jury to determine, and this they did contrary to appellant's contention. It is true, as contended in appellant's motion for rehearing, that a map is found in the record on which are some pencil marks apparently placed there by someone other than the maker of the map. The evidence fails to disclose who did do so in such a way as to enable this court to accept this proof as conclusive. The matter as to the location of the scene of the tragedy was still a controverted issue and the jury has settled it.

All questions raised by appellant in his motion for rehearing were thoroughly considered by the court on the State's motion,

as well as on original submission, and, we think, sufficiently discussed in the opinion on rehearing to make clear our position. The county surveyor testified positively that the crime was committed in New Mexico, while the deputy sheriff, with equal positiveness, asserted that the spot was in Texas. The argument presented in this motion goes to the weight of the evidence and that was a matter which the jury, in all probability, duly considered. At least, it is their province and not within the powers of this Court.

Appellant's motion for rehearing is overruled.